In the Supreme Court of Georgia

Decided:   November 2, 2015

S15A0906. TWITTY v. THE STATE.

BLACKWELL, Justice.

Demetric Twitty was tried by a Richmond County jury and convicted of murder and other crimes, all in connection with the fatal shooting of Ian Mosley. Twitty appeals, contending only that the State failed to prove that venue properly lay in Richmond County. Upon our review of the record and briefs, we agree that the State failed to prove venue, and for that reason, the judgment of the trial court is reversed.[1]

_____

[1] Mosley was killed on or about July 24, 2006. Twitty and co-defendants Kelly Roberts and Edward Reeves were indicted on October 31, 2006, and they were reindicted on November 13, 2007. Each defendant was charged with malice murder, felony murder, and the unlawful possession of a firearm during the commission of a crime. In addition, Reeves was charged with the unlawful possession of a firearm by a convicted felon, and Twitty was charged with the unlawful use of a firearm by a convicted felon during the commission of a crime. The case against Twitty was severed from the prosecution of Roberts and Reeves, and Twitty was tried alone, beginning on December 3, 2007. The jury returned its verdict four days later, finding him guilty on all counts. Twitty was sentenced to imprisonment for life for malice murder, a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a crime, and a consecutive term of imprisonment for fifteen years for unlawful use of a firearm by a convicted felon during the commission of a crime. The verdict as to felony murder was vacated by operation of law. Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Twitty timely filed a

1. Viewed in the light most favorable to the verdict, the evidence shows that Mosley drove to Gaffney, South Carolina, to visit friends on July 24, 2006. Late that afternoon, Twitty and Kelly Roberts abducted Mosley, tied him up, and put him into the trunk of his own car. Twitty and Roberts then drove the car to Milledgeville, Georgia, where they met up with Edward Reeves. Twitty, Roberts, and Reeves then drove to a park known as the "Lock and Dam." In or near the park, they backed the car down a boat ramp, where Twitty pulled Mosley from the trunk, fired three shots (one to Mosley's head), and dumped Mosley into the water. The next morning, a local fisherman found Mosley's body in the water at the Lock and Dam.

Aside from venue — which we address in Division 2 below — Twitty does not dispute that the evidence is sufficient to sustain his convictions.

motion for new trial on January 4, 2008, and he amended it on April 21, 2014. The trial court denied his motion on April 25, 2014, and Twitty timely filed a notice of appeal on May 5, 2014. The case was docketed in this Court for the April 2015 term and submitted for decision on the briefs.

Because we reverse the convictions for insufficient proof of venue, we have no occasion to consider whether the trial court erred when it separately sentenced Twitty for the unlawful possession of a firearm during the commission of a crime and the unlawful use of a firearm by a convicted felon during the commission of a crime. See Favors v. State, 296 Ga. 842, 847 (5) (770 SE2d 855) (2015) (merger error properly can be addressed by appellate court sua sponte).

2

Nevertheless, we have independently reviewed the record with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Twitty was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Twitty contends that the State failed to prove that venue properly lay in Richmond County. A criminal case must be tried "in the county where the crime was committed," Ga. Const. of 1983, Art. VI, Sec. II, Par. VI, and our law generally considers a criminal homicide to have been committed "in the county in which the cause of death was inflicted." OCGA § 17-2-2 (c). "If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred." Id. "If a dead body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered." Id. As for crimes other than homicide, "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have

3

been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." OCGA § 17-2-2 (h). Venue is a jurisdictional fact that must be proved by the State beyond a reasonable doubt whenever it is in issue, and under our precedents, a plea of not guilty is sufficient to put venue in issue. See Sales v. State, 296 Ga. 538, 540 (2) (a) (769 SE2d 374) (2015); Jones v. State, 272 Ga. 900, 901-903 (2) (537 SE2d 80) (2000).

In this case, the cause of death — the shooting of Mosley — was inflicted on a boat ramp in or near the Lock and Dam park. The evidence shows that Twitty made several statements, accompanied investigators to a particular boat ramp in the Lock and Dam park, and admitted that Mosley was shot on that boat ramp. Reeves testified as well that Mosley was shot on a boat ramp in the vicinity of the Lock and Dam. Mosley's body was found in the water at the Lock and Dam, a location consistent with his having been shot on a boat ramp in or near the park. And although no forensic evidence of the shooting was found at the boat ramp to which Twitty accompanied the investigators, there was no evidence that the cause of death was inflicted anywhere other than the boat ramp. The State's theory of the case pointed to the boat ramp as the scene of the

4

shooting.[2] And there was no evidence that the county in which the boat ramp was located could not be ascertained. Proper venue for the murder lay, therefore, in the county in which the boat ramp is situated. See OCGA § 17-2-2 (c). Venue for the other crimes of which Twitty was convicted necessarily lay in the same county. See OCGA § 17-2-2 (a). The State failed, however, to adduce any evidence identifying that county.

The State points to evidence that Mosley's body was found in Richmond County. The county in which a body is found, however, establishes venue for a homicide only when "it cannot be readily determined in what county the cause of death was inflicted." OCGA § 17-2-2 (c). The State also points to evidence that Richmond County law enforcement officers undertook to investigate the killing of Mosley, and citing Chapman v. State, 275 Ga. 314, 317-318 (4) (565 SE2d 442) (2002), the State argues that this evidence is some proof that the crime was committed in Richmond County. Even if evidence of the county in

---

[2] Indeed, in closing arguments, after defense counsel speculated that perhaps Mosley might have been killed in South Carolina, the prosecuting attorney responded that "it's clear" that Mosley was killed in Georgia. In support of this response, the prosecuting attorney pointed to Twitty's own admissions (putting the infliction of the cause of death on the boat ramp), Reeves's testimony (putting the infliction of the cause of death on the boat ramp), and the location in which the body was found (consistent with the cause of death being inflicted on a boat ramp).

which an investigating officer is employed might be sufficient in some cases without more to establish venue, but see In re B. R., 289 Ga. App. 6, 9 (2) (656 SE2d 172) (2007) ("evidence of an investigating officer's county of employment is insufficient standing alone to prove venue"), the evidence in this case that Richmond County officers were involved in the investigation is no evidence of the location in which the cause of death was inflicted, which is, of course, the relevant location for venue purposes. Here, the officers were not called to respond to that location, but instead to the separate location at which the body was found, which indisputably was in Richmond County. That Richmond County law enforcement officers would be involved in an investigation of the discovery of a body in Richmond County is unsurprising, and their involvement proves nothing about the location in which the cause of death was inflicted, especially when evidence shows clearly that the cause of death was inflicted somewhere other than the place in which the body was found. See Thompson v. Brown, 288 Ga. 855, 856-857 (708 SE2d 270) (2011); King v. State, 271 Ga. App. 384, 387 (1) (609 SE2d 725) (2005). Finally, the State notes some uncertainty about the place in which death occurred, pointing to some evidence that Mosley still was alive when he was dropped into the

6

water. But even if the place in which death occurred is uncertain, the place in which the cause of death was inflicted is not. See Tankersley v. State, 261 Ga. 318, 323 (8) (404 SE2d 564) (1991).

After reviewing the record in the light most favorable to the verdict, we must conclude that the State failed to prove venue beyond a reasonable doubt. See Thompson, 288 Ga. at 857; Jones, 272 Ga. at 903 (3). The boat ramp to which all of the evidence pointed as the scene of the crime was known to investigators, but no one at trial asked those investigators about the county in which the boat ramp was located. See Grant v. State, 326 Ga. App. 121, 124 (2) (756 SE2d 255) (2014) (officers could have established where the offense was committed, but they were not asked). Accordingly, we must reverse the judgment below. As we have explained before, however, our reversal of a judgment of conviction because the State failed to adequately prove venue is no bar to retrial. Lynn, 275 Ga. at 290 (4). And as we did in Thompson, we "urge prosecutors to make sure that they do not overlook this essential part of their cases."[3] 288 Ga. at 858 (citations omitted).

---

[3] For all we know, the entire Lock and Dam park, and every boat ramp in its vicinity, may be located in Richmond County. And perhaps the jurors — residents of Richmond County — would have known as much from their everyday lives and their common

Judgment reversed. All the Justices concur.

---

knowledge of the community that they share.

> Nevertheless, that fact is not established by the trial record, and defendants may not be convicted of crimes based on extra-judicial knowledge rather than evidence of such essential facts admitted at trial. We have noted before that, in light of the ease with which venue generally can be proved, it is difficult to understand why the appellate courts are repeatedly faced [with this] issue. Nevertheless, like the Court of Appeals, we continue to see cases like this one in which venue becomes a serious issue on appeal, apparently unnecessarily. One way to encourage prosecutors to make sure they have proven venue and to alert the juries to their role in determining venue is to instruct juries that they must find venue beyond a reasonable doubt. Accordingly, this Court strongly urges trial courts to begin giving an appropriate charge on venue tailored to the facts of the case.

Thompson, 288 Ga. at 857-858 (citations and punctuation omitted).