304 Ga. 582
FINAL COPY

S18A0725. RAINES v. THE STATE.

BOGGS, Justice.

In March 2013, a jury found Dantazias Raines guilty of malice murder and other crimes in connection with the killing of Brandy Guined, as well as three counts of misdemeanor obstruction of a police officer.[1] He was sentenced to life without the possibility of parole plus 40 years to serve consecutively. His amended motion for new trial was denied, and he now appeals, asserting insufficiency of the evidence with respect to venue, corroboration of accomplice testimony, and the misdemeanor obstruction charges. He also asserts that the trial court erred in failing to charge on accomplice corroboration; that the jury

---

[1] The crimes occurred on December 21, 2011. On March 19, 2012, an Upson County grand jury indicted Raines for malice murder, felony murder, aggravated assault, criminal attempt to commit armed robbery, possession of a firearm during commission of a felony, possession of a handgun by an underage person, and three counts of obstruction. Raines was tried before a jury on March 18-20, 2013. The jury found Raines guilty on all counts, and he was sentenced to life imprisonment without the possibility of parole plus 19 years. The trial court merged the felony murder count into the malice murder count instead of noting that it was vacated by operation of law. It also merged the aggravated assault count into the malice murder count. Raines' amended motion for new trial was denied on September 1, 2017, his notice of appeal was filed on September 11, 2017, and the case was docketed in this Court for the term beginning in April 2018. The case was orally argued on May 9, 2018.

improperly considered materials not admitted into evidence; and that his sentence of life without parole is void as a matter of law. We find the evidence sufficient except with respect to venue on the obstruction charges, and find no plain error with respect to the jury instruction or the consideration of evidence by the jury. We therefore affirm in part and reverse in part, vacate Raines' sentence in part, and remand this case to the trial court for resentencing in light of our subsequent decision in Veal v. State, 298 Ga. 691, 702-703 (5) (d) (784 SE2d 403) (2016).

Construed to support the verdict, the evidence showed that in the early morning hours of December 21, 2011, the Thomaston, Georgia police "received a call to Avenue N in reference to a possible shooting involving a taxicab driver." On the way to that location, police saw a vehicle trapped in a fence at a convenience store on Barnesville Street with tires that were spinning "at a high rate of speed." After several attempts, an officer was able to break a window and shut off the ignition before the vehicle broke through the fence. The victim was unconscious behind the wheel. She was transported to Upson Regional Medical Center, where she died of a gunshot wound to the torso. Police found a purse containing over $150 in cash clutched under her right arm.

2

Earlier, on the evening of December 20, 2011, Raines came to the back door of his friend and neighbor, Marquerious Traylor, and asked him to come outside because he had "a sweet lick to catch." Traylor understood that to mean a robbery or theft to obtain "some dope and some money." Raines asked to use Traylor's iPod, which was set up to use as a phone. Traylor gave it to him and then went inside to get a jacket. As they walked toward the intersection of Third Street and Avenue N, a taxicab approached. Raines flagged down the cab, entered the rear passenger side, and pulled out a gun. At that point, Traylor ran home. As he ran, he heard a gunshot and a woman's scream. After he got home, he contacted Raines and asked, "[D]id he shoot the lady. [Raines] said, 'Hell, yeah.'"

Later on December 21, Traylor asked Raines why he had shot the victim, and Raines responded that "she tried to grab the gun and he got nervous and shot her." Traylor also recorded on his iPod a conversation with Raines and that recording was played for the jury. Raines' counsel stated that he had no objection to the playing of the recording.

On the same day, Raines was riding in a car with Reginald Dawson and Terrell Searcy. Searcy testified that Dawson asked him if he had heard about

"the cab incident last night." Raines volunteered that at the time he was walking "from his momma's house . . . to his home boy's house." He told them he was walking down Avenue N when he heard some noise "like somebody was arguing or fighting." When he turned around, he saw a car by the side of the road and someone arguing with the driver. He then heard a gunshot and a woman's scream. When he got on Barnesville Street, "the same cab flew past him." When asked if Raines "gave any details about the crime that struck you as odd" or if "he appear[ed] to know more than he should have," Searcy responded, "You could say that. I don't know."

The State called Dawson to testify, but Dawson stated that he did not remember speaking with Raines or what he had told police in his interview. The State then played a portion of his recorded police interview for the jury, in which Dawson — though he could not recall any details — said that Raines told him on the night of the shooting, "I seen something," but added, "I don't want to talk about it," and later told him and Searcy, "I seen what happened," although Dawson could not recall any details. Dawson told the police investigators that he concluded that "something ain't right" and Raines "knew something" about the shooting. He also told Raines' mother, for whom he had

4

romantic feelings, that she needed to talk to Raines. After the recording was played for the jury, Dawson acknowledged that there was a conversation between him, Searcy, and Raines about the murder and that Raines told him he "heard something" about the murder. He acknowledged that his feelings for Raines' mother made it hard for him to testify and that he talked the situation over with her and told her "she needed to talk to [Raines]."

1. First, Raines contends that the evidence was insufficient to establish venue in Upson County. "[A]ll criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county."[2] Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. And as a general rule, a criminal homicide is considered to have been committed "in the county in which the cause of death was inflicted." OCGA § 17-2-2 (c).

The former rule that "slight evidence" was sufficient to support venue has been essentially abrogated, as it "can never be invoked after a criminal defendant pleads not guilty and is placed on trial." Jones v. State, 272 Ga. 900,

---

[2] Raines moved for a change of venue on the ground of extensive pretrial publicity and community discussion. That motion was denied, and Raines does not enumerate that ruling as error.

5

902 (2) (537 SE2d 80) (2000).

> Consequently, we view the evidence of venue as we do in a challenge to the general sufficiency of the evidence, that is, the evidence of venue is viewed in a light most favorable to supporting the verdicts in order to determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime or crimes were committed in the county in which the defendant was indicted.

(Citation omitted.) Pike v. State, 302 Ga. 795, 797 (1) (809 SE2d 756) (2018).

No witness was ever directly asked to identify the county in which the cause of death was inflicted, or in which the events surrounding the victim's death occurred.[3] But evidence was presented from which the jury could, under an appropriate instruction from the trial court, find beyond a reasonable doubt that venue was properly laid in Upson County.

(a) With respect to the felony counts related to the shooting of the victim, testimony was presented from several witnesses that the cause of death was inflicted on Avenue N. And, as the State points out, "[i]t is undisputed that the entire area in question is located in Thomaston, Georgia." While this alone is

---

[3] "We have noted before that, in light of the ease with which venue generally can be proved, it is difficult to understand why the appellate courts are repeatedly faced with this issue. Nevertheless, like the Court of Appeals, we continue to see cases like this one in which venue becomes a serious issue on appeal, apparently unnecessarily." (Citations and punctuation omitted.) Twitty v. State, 298 Ga. 204, 208 (2) n.3 (779 SE2d 298) (2015).

6

insufficient to show venue, see <u>Graham v. State</u>, 275 Ga. 290, 293 (2) (565 SE2d 467) (2002), taking the testimony at trial as a whole, sufficient evidence was presented from which a rational finder of fact could conclude that venue was established in Upson County.

One principle that applies is the general presumption that officers do not exceed their authority. See <u>Chapman v. State</u>, 275 Ga. 314, 317-318 (4) (565 SE2d 442) (2002). While the crime was investigated primarily by city police officers and the GBI, an agent of the Upson County Narcotics Task Force testified that he was "involved in the investigation of the homicide of Brandy Guined back in 2011." At trial, he testified that he executed an unrelated search warrant in January 2013 and recovered a High Point brand .380 caliber pistol. He identified the pistol, which was tendered as State's Exhibit 31, contained in an evidence bag labeled "County: Upson." Because his earlier participation in the homicide investigation had made him aware that this particular brand and caliber of firearm had inflicted the victim's fatal wound, he contacted the GBI and turned the firearm over to them for testing. A firearms examiner testified that it was, indeed, the weapon that fired the projectile recovered from the victim's body. In addition, State's Exhibit 30, a sealed package containing the

recovered projectile, is labeled both "Upson County" and "County: Upson." It was admitted into evidence and went out with the jury, as did State's Exhibit 31, the bag containing the firearm and labeled "County: Upson."[4]

Finally, the State examined a GBI agent regarding his discovery of a notebook in the taxicab with the victim's name on it, which appeared to be a dispatch log containing a list of addresses with the headings "pick-up" and "drop-off," with the last, incomplete entry showing an address on Avenue N. Raines' counsel objected to the admission of the notebook and any testimony regarding its contents. The prosecutor asserted that he would "lay a further foundation" by having a witness identify the handwriting as the victim's. See Norris v. State, 289 Ga. 154, 158-159 (3) (709 SE2d 792) (2011). But the State never called a witness to identify the handwriting.[5] The trial court thereafter

---

[4] As the special concurrence acknowledges, evidence in the form of bags and labels is routinely used to establish chain of custody. See, e.g., Buckner v. State, 219 Ga. App. 71, 73 (5) (464 SE2d 11) (1995) (addressing continuing witness objection to label on evidence bag showing, inter alia, date, time, defendant, suspected contents, and "the county where the evidence was obtained"). Moreover, use of such materials as "evidence" has not been limited to "internal administrative purposes." See, e.g., Brooks v. State, 324 Ga. App. 352, 356 (2) (c) (750 SE2d 423) (2013) (defense counsel argued that mislabeled evidence bag, inter alia, supported reasonable doubt as to defendant's guilt).

[5] The prosecutor called the victim's father to identify a photograph of the victim in life, but did not ask him to identify his daughter's handwriting or the notebook.

repeatedly sustained objections to any contents of the notebook being revealed to the jury.

Although these rulings severely limited his testimony, the GBI agent testified that he examined the notebook recovered from the cab. He was asked if, based on his examination, he "ha[d] any leads as to where this crime may have potentially occurred," and he responded, "Yes." He was asked if that location had an address, and he responded that it did. He then was asked if that address was "here in Upson County," and he responded, "Yes." The State's next question, "Do you know what that address was?" resulted in yet another objection, which was sustained.[6] The prosecutor then asked, "Based on your examination of the notebook, did you or other officers proceed to a location in Thomaston?" The witness responded, "Yes." The prosecutor then asked, "Okay. And what area was that location?" The witness responded, "Avenue N." This testimony connected the location of the crime in Upson County with the testimony of the witnesses who stated that the crime occurred on Avenue N in Thomaston, Georgia.

---

[6] In sustaining the objection, the trial court observed, "The problem is that . . . you're asking him what is the content of the notebook. By contrast . . . there would be no objection that I can envision if you asked him what address he proceeded to."

In Twitty v. State, 298 Ga. 204 (779 SE2d 298) (2015), we suggested that "an appropriate charge on venue tailored to the facts of the case" would "encourage prosecutors to make sure they have proven venue and to alert the juries to their role in determining venue." 298 Ga. at 208 (2) n.3. Here, the trial court instructed the jury that "[v]enue, that is, that the crime was committed in Upson County, is a jurisdictional fact that must be proved by the State beyond a reasonable doubt as to each crime charged in the indictment, just as any element of the offenses. Venue must be proved by direct or circumstantial evidence, or both." This charge alerted the jury that the State was required to prove venue of all the crimes charged, whether by direct or circumstantial evidence, and the evidence presented was sufficient to establish venue in Upson County.

(b) Raines similarly contends that the State failed to show venue with respect to the misdemeanor obstruction charges, Counts 7-9 of the indictment. We agree. The sole witness testifying to obstruction, a GBI agent, testified only that Raines resisted arrest at the "Narcotics Task Force," without any specific mention of Upson County or the physical location of that office. The State argues that other witnesses identified this location as "the Upson County

10

Narcotics Task Force,"[7] but that testimony does not establish the task force's physical location within the county, particularly in light of the first witness' testimony regarding "the narcotics task force headquarters here in Thomaston, co-located in the Pike County Sheriff's Office." It is true that proof of venue may include the county in which a defendant was incarcerated, see Stockard v. State, 327 Ga. App. 184, 186-187 (2) (761 SE2d 351) (2014), overruled on other grounds, Martin v. McLaughlin, 298 Ga. 44, 46 n.3 (779 SE2d 294) (2015), and Raines was transported to the Upson County jail after his arrest. But that arrest was for a murder committed in Upson County, as noted in Division (1) (a), and no evidence was presented that Raines was arrested or confined for obstruction. The State therefore failed to prove venue with respect to the misdemeanor obstruction counts, and that portion of the judgment of conviction must be reversed.

2. Raines also asserts that the evidence was insufficient to support his conviction of the crimes charged.

---

[7] Another GBI agent testified that, in investigating the murder, "we had a wrecker service here in town transport the vehicle to the Upson County Narcotics Task Force so we could actually process the car inside of a garage and get it out of the weather." And a third law enforcement officer, who likewise participated in the murder investigation, testified that he was employed by the "Upson County Narcotics Task Force."

(a) With respect to the felony charges, the testimony of Traylor ordinarily would be ample to support the conviction. However, Raines correctly argues that Traylor's testimony must be corroborated.

OCGA § 24-14-8 provides:

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

When the only witness is an accomplice, corroborating evidence is required to support a guilty verdict. See Edwards v. State, 299 Ga. 20, 22 (785 SE2d 869) (2016). Here, although no party ever asserted that Traylor was an accomplice, Traylor admitted that he and Raines were going "to rob somebody," he allowed Raines to use his iPod, and he accompanied Raines as Raines flagged down the cab. This testimony provided some evidence that Traylor was an accomplice, and his testimony about the crimes therefore must be corroborated. See Manner v. State, 302 Ga. 877, 882 (II) (A) (808 SE2d 681) (2017) (some evidence that witness was accomplice when he provided a firearm and drove perpetrators to and from scene of crime).

In contrast to the proof required for venue, sufficient corroboration of accomplice testimony requires only "slight evidence":

> Although OCGA § 24-14-8 provides that corroboration is required to support a guilty verdict in "felony cases where the only witness is an accomplice," only slight evidence of corroboration is required. The necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime.

(Citations and punctuation omitted.) Huff v. State, 300 Ga. 807, 809 (1) (796 SE2d 688) (2017). The evidence "need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt. The sufficiency of the corroboration is a matter for the jury to decide." (Citations and punctuation omitted.) Parks v. State, 302 Ga. 345, 348 (806 SE2d 529) (2017). And in considering sufficiency, we "must consider all the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." (Citations, punctuation and footnote omitted.) Cowart v. State, 294 Ga. 333, 343 (6) (751 SE2d 399) (2013).

Some of the evidence presented by the State was not independent of the accomplice's testimony. For example, the State played for the jury a recording

13

made by Traylor, in which Raines made damaging admissions. But the only person who identified Raines as a party to that recorded conversation was Traylor. At trial, a GBI agent testified to the origin of the recording, but he never identified the voices on the recording. Raines did not testify, and there is no indication that the jurors had an opportunity to hear his voice for themselves. And some additional evidence was excluded by the trial court.[8]

However, other evidence corroborates Traylor's testimony. Raines' own statement to Searcy and Dawson, only hours after the murder, placed him on the scene. See Parkerson v. State, 265 Ga. 438, 439 (2) (457 SE2d 667) (1995). And Raines' description of the attempted robbery and murder is corroborative, despite his claim that he was a mere bystander. See Huff, supra, 300 Ga. at 809 (1) (appellant's admission that he was at crime scene, inter alia, provided corroboration, even though he claimed an innocent explanation for presence); Jones v. State, 271 Ga. 433, 434 (520 SE2d 690) (1999) (defendant's statement to police that he was witness to armed robbery and murder "replete with details

---

[8] In addition to the exclusion of the victim's notebook for lack of foundation, Raines' motion in limine to exclude his recorded custodial statement to police and the seizure and subsequent search of his cell phone during that statement was granted because the police failed to administer Miranda warnings.

14

that only a participant in the crime would know" sufficiently corroborated accomplice testimony). Raines' story or demeanor was so concerning to Dawson that he told Raines' mother that she needed to talk to her son. Traylor's testimony that Raines told him that he had a "sweet lick to catch" is corroborated by the discovery of a large amount of cash clutched under the victim's arm. And, finally, Raines' resistance to arrest and attempts to escape from police provide some corroboration. See <u>Williams v. State</u>, 287 Ga. App. 361, 362 (1) (651 SE2d 768) (2007). This evidence is sufficient to satisfy the slight corroboration requirement.

(b) We next consider the sufficiency of the evidence of misdemeanor obstruction in Counts 7-9. Because venue is a jurisdictional matter and not a substantive fact bearing upon guilt or innocence, when a case is reversed for failure to prove venue, the defendant may be retried if the evidence presented was sufficient to support his conviction for the crimes charged. See <u>Jones</u>, supra, 272 Ga. at 905 (4).

During his interview, in the presence of three named officers, Raines was advised that he was under arrest and instructed to place his hands behind his back, but he refused. He then was placed in handcuffs and instructed to sit

15

down, but he again refused, so Agent Smith attempted to force him into the chair. He then began to struggle with all three officers and was forced to the ground, where all three had to lie on him until he stopped struggling and could be transported to jail.

Raines argues that he cannot be found guilty of misdemeanor obstruction because he was not "attempt[ing] to resist a lawful arrest," as charged in the indictment, as he was "already under arrest" and had — after his initial refusal — been placed in handcuffs.[9] This is not an accurate statement of the law. A person may commit the offense of resisting arrest after being informed that he is under arrest. See, e.g., Harrison v. State, 313 Ga. App. 861 (722 SE2d 774) (2012) (defendant fought with officers after being informed he was under arrest). Moreover, the fact that an officer has managed to apply handcuffs to a struggling arrestee does not foreclose continuing efforts to resist arrest, such as refusing to enter a patrol car or continuing to struggle with officers. See, e.g., Reeves v. State, 288 Ga. App. 544 (654 SE2d 449) (2007); Glenn v. State, 269 Ga. App. 412, 413 (604 SE2d 255) (2004).

---

[9] OCGA § 16-10-24 (a) provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."

16

Raines also contends that the three separate counts of obstruction occurred within so short a period of time as to constitute one event, so that the three counts should have merged, citing Lidy v. State, 335 Ga. App. 517 (782 SE2d 302) (2016). But unlike the defendant in Lidy, who committed a single act lasting "only a few seconds" by attempting to break away from two officers as they were holding his elbows, id. at 520 (2), here Raines engaged in actions that were "separate and distinct with independently supporting facts," (citation and punctuation omitted) id., as he resisted being handcuffed by an officer, refused to sit down until forced by an officer, and then struggled on the floor with all three officers until he was subdued. This enumeration of error is without merit. See Mobley v. State, 345 Ga. App. 393, 394 (812 SE2d 796) (2018) (shooting at two police officers sequentially and from different points inside car "does not amount to a single act").

Because the evidence was sufficient to support the obstruction charges, Raines may be retried by the State if it chooses to do so. Cowart, supra, 294 Ga. at 344 (6).

3. Raines also enumerates as error the lack of a jury instruction on accomplice corroboration. Raines asserts on appeal that his sole defense at trial

was the lack of corroboration of an accomplice, and that this entitles him to a jury instruction even if unrequested. This "affirmative defense," he contends, must be given in charge unless the remainder of the charge fairly presents the issues, including the defendant's theory of defense.

While Raines argues that trial counsel's "entire defense rested on the legal requirement that an accomplice's testimony must be corroborated," this statement is not accurate. Trial counsel's closing argument made no mention of an accomplice, but instead argued that Traylor, not Raines, was the perpetrator. She focused on attacking Traylor's credibility: his admissions that he received immunity, had lied, and had destroyed evidence. From this, counsel argued that Traylor was "not worthy of belief," and had a strong motive in testifying that Raines was the culprit "to keep himself out of trouble." After noting the lack of physical evidence connecting Raines to the crime, she concluded by emphasizing the State's burden "to prove its case beyond a reasonable doubt."[10]

---

[10] Raines has not asserted ineffective assistance of counsel, and this Court has no evidence with regard to trial counsel's theory of the case or whether her omission of a request to charge on accomplice corroboration was deliberate. Compare Manner, supra, 302 Ga. at 884 (II) (A) (decision to forgo charge on corroboration not objectively unreasonable when charge in conflict with defense theory that defendant was not accomplice and uninvolved in crime).

18

In addition, the decisions cited by Raines all involve affirmative defenses, a defense "that admits the doing of the act charged but seeks to justify, excuse, or mitigate it." (Citation and punctuation omitted.) McNeal v. State, 302 Ga. 222, 224 (805 SE2d 820) (2017). The lack of accomplice corroboration is not a separate defense; the corroboration is simply an element of the State's case, which, as Raines' trial counsel emphasized, must be proved beyond a reasonable doubt.

Because Raines did not request this instruction and failed to object to its omission, this enumeration is reviewed for plain error only. Wilson v. State, 301 Ga. 689, 693 (3) (804 SE2d 54) (2017). In conducting a plain error analysis,

> the proper inquiry is whether the [failure to give the] instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

The trial court here did not omit the corroboration charge while also instructing the jury that the testimony of a single witness is sufficient to prove

19

a fact. That misleading single-witness instruction amounted to plain error in Stanbury v. State, 299 Ga. 125 (786 SE2d 672) (2016), but it was not given here. And the trial court correctly instructed the jury on the presumption of innocence, burden of proof, and reasonable doubt, grave suspicion, and impeachment and credibility, including that the jury could consider false testimony, immunity, or leniency in evaluating credibility.[11] Therefore,

> this Court need not decide whether the absence of a correct instruction, rather than the presence of an incorrect instruction, is reversible error. Here, given the quantum of evidence, combined with the fact that the instruction was incomplete rather than overtly incorrect, [Raines] cannot show that the instruction likely affected the outcome of the proceedings. Accordingly, we find no plain error.

(Citations and punctuation omitted.) Huff, supra, 300 Ga. at 811 (2).

4. Raines also enumerates as error the publishing of the recorded police interview of Dawson and Traylor's iPod recording of Raines to the jury without tendering or admitting them into evidence. Again, because Raines did not raise this objection at the time the recordings were played or when their status was discussed before the jury began deliberations, we review this enumeration for

---

[11] The defense withdrew its request for a charge on mere presence.

20

plain error only. OCGA § 24-1-103 (d).[12]

Even assuming that failure to identify a voice recording with an exhibit number or to tender it into evidence was erroneous, Raines has failed to show harm. His counsel intially objected to the iPod recording being played for the jury, because she contended there was mention in it of Raines' police interview, which had been excluded from evidence. That objection was overruled, as the court concluded there was no reference to the interview. The recording was played for the jury, with counsel indicating that she had no other objection. With respect to Dawson's police interview, Raines' counsel raised specific objections, and after replaying of the interview outside the presence of the jury, and with the agreement of the State, parts of the recording were redacted. Again with Raines' agreement, the remaining portions were played for the jury, with an instruction from the trial court regarding the redactions. And, after an extensive discussion with the trial court regarding the preservation and transmission of the recordings for appeal, the State and Raines agreed that the recordings would not go out with the jury. Raines has not shown how he was harmed by the failure to admit

---

[12] The sole decision cited by Raines, Cash v. State, 337 Ga. App. 511 (786 SE2d 560) (2016), addresses sufficiency of the evidence and does not involve a review for plain error.

21

formally into evidence recordings that were played for the jury but did not go out to the jury room. He therefore has failed to demonstrate any plain error affecting his substantial rights under OCGA § 24-1-103 (d).

5. The State concedes, and we agree, that Raines' sentence must be vacated and his case remanded for resentencing in accordance with the requirements of Veal v. State, 298 Ga. 691, 699 (5) (c) (784 SE2d 403) (2016).[13]

Judgment affirmed in part, reversed in part, and vacated in part, and case remanded for resentencing. All the Justices concur, except Warren and Bethel, JJ., not participating. Melton, C. J., concurs specially as to Division 1 (a).

---

[13] As the State notes, Veal was decided several years after Raines' sentencing. 298 Ga. at 701-702 (5) (d).

MELTON, Chief Justice, concurring specially.

While I agree with the majority's conclusion that the evidence to prove venue in this case was sufficient with respect to the charges related to murder (and insufficient with respect to the misdemeanor obstruction charges), I am not convinced that, with regard to the charges related to murder, a label on an evidence bag should be included as part of the mix of evidence that should be considered to show that venue has been properly proven. The items contained *within* the evidence bags relating to the murder — in this case, a gun and a projectile — are the salient pieces of evidence to be considered in a given trial, not the containers used to house those items. A label is generally just used for internal record-keeping purposes to identify a relevant piece of evidence or an exhibit or to help establish the chain of custody for that item. In this regard, to the extent that the labels on the evidence bags in this case could be considered for some purpose at trial, they would be considered, and admitted, for purposes of showing a proper chain of custody for the admission into evidence of the *gun*

*and projectile* at trial, not as substantive evidence that the murder in this case took place in a particular county.

However, by including the evidence bag labels as part of the "evidence" from which venue can be inferred by a jury, the majority has essentially converted the bags holding the evidence and any tags attached to evidence for internal administrative purposes into substantive evidence. Furthermore, defense attorneys are now being placed in a position where they have to object to labels on evidence bags and request a limiting instruction to ensure that the label will not be considered as evidence of venue or for any other purpose beyond the stated purpose for which the label is being admitted. To me, the scenario created by the majority is a bridge too far with respect to the State's burden of proving venue, and this Court should not be in the business of taking such an unnecessary step onto that bridge especially where, as here, the evidence is otherwise sufficient to show that venue with respect to the murder was properly proven.

Decided October 22, 2018.

Murder. Upson Superior Court. Before Judge Edwards.

Christina R. Cribbs, Veronica M. O'Grady, for appellant.

Benjamin D. Coker, District Attorney, B. Ashton Fallin, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.