**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**May 19, 2021**

# In the Court of Appeals of Georgia

A21A0463. ALVAREZ-MALDONADO v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Reynaldo Alvarez-Maldonado on one count each of trafficking in methamphetamine, possession of a false identification document, and giving a false name to a law enforcement officer. On appeal, Alvarez-Maldonado challenges the sufficiency of the evidence supporting his trafficking conviction and further argues that the trial court erred in denying his claim that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the afternoon on April 29, 2017, a Gwinnett County police officer initiated a

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

traffic stop on a white Infiniti because the registration-expiration decal on the vehicle's license tag was obstructed. Then, after the vehicle pulled into the parking lot of a motel, the officer approached and observed that there were two occupants—a female driver and a male in the front passenger seat. The officer requested the female driver's license, which identified her as Patrice Sprayberry. Upon a similar request to the passenger, he handed the officer a North Carolina license, which identified him as Edwin Rodriguez. But based on the license's blurry photograph and notation that Rodriguez resided in "Linton-Salem," North Carolina, the officer suspected the license was fake. And after returning to his patrol vehicle and checking the license, this suspicion was confirmed.

At this point, the officer asked Sprayberry to exit her vehicle so he could speak with her alone. She complied, but appeared jumpy. And when the officer asked Sprayberry how long she had known the passenger, she indicated that she only met him 20 minutes ago at bar a few blocks away called Corona's. But Sprayberry later clarified her statement, advising that she had known the man's brother, Jose, for about six months, and had known the passenger for about the same amount of time but not well. So, after speaking with Sprayberry for several minutes, observing her nervousness, listening to her inconsistent responses, and viewing the passenger's fake

2

driver's license, the officer requested consent to search the vehicle. Sprayberry agreed, and the officer then instructed the passenger to exit the vehicle. After he complied, the officer asked the passenger for his name, and he responded with the same name indicated on his license. But when the officer informed him that Sprayberry claimed his name was Jose (even though she had not done so), the passenger identified himself as Alvarez-Maldonado.

By that time, two more officers arrived on the scene, and the officer who initiated the traffic stop began searching Sprayberry's vehicle. Almost immediately, the officer found a sunglass case in the compartment on the passenger-side door, inside of which was a plastic bag containing a white, powdery substance that appeared to be cocaine. Next, on the floorboard behind the front passenger-side seat, the officer recovered a red Tupperware container, inside of which was a crystal substance the officer believed was methamphetamine. Then, behind the driver's seat, the officer found a small rolling briefcase, inside of which were two more Tupperware containers, one blue and one yellow, also containing what the officer suspected were larger quantities of methamphetamine. And when asked if the rolling briefcase was hers, Sprayberry initially said it was but, upon discovery of the methamphetamine, claimed it belonged to Alvarez-Maldonado. In addition to the

drugs, the officer found digital scales and a small blue bag containing over $8,000 in cash in the backseat of the vehicle.

Subsequently, the officer arrested both Sprayberry and Alvarez-Maldonado. In his search incident to Sprayberry's arrest, the officer recovered a cell phone; and in his similar search of Alvarez-Maldonado, he recovered two cell phones and $1,980 in cash. Thereafter, they were placed in separate patrol vehicles, at which point Sprayberry spontaneously told the officer that she had just picked up Alvarez-Maldonado at Corona's in order to deliver methamphetamine to a nearby location and that if the officer let her complete the delivery, he could make additional arrests. A few minutes later, as the officer was driving Sprayberry to the precinct, she repeated her offer. But as the officer was not prepared to initiate an undercover operation, he declined.

The State jointly charged Sprayberry and Alvarez-Maldonado with one count each of trafficking in methamphetamine, possession of cocaine, and possession of drug-related objects. And in the same indictment, the State also charged Alvarez-Maldonado with possession of a false identification document and giving a false name to a law enforcement officer. But prior to trial, Sprayberry—who had a previous conviction on drug-related charges—agreed to plead guilty to trafficking in

methamphetamine and testify against Alvarez-Maldonado. Under that agreement, Sprayberry explained that she frequently purchased methamphetamine from a dealer she knew as Jose. On April 27, 2017, she contacted Jose, via cell phone, and arranged to purchase a large amount of methamphetamine. That same day, after texting Jose and his wife that she could not find the address where she was supposed to make the purchase, Jose's wife told her to wait at a nearby pharmacy. There, Alvarez-Maldonado approached her and directed that she follow his vehicle to the purchase location, which she did. The next day, Sprayberry contacted Jose again to inform him that the meth she purchased was bad quality and ask if she could exchange it. Jose agreed, and thus, on April 29, 2019, she went with one of Jose's associates to Corona's where she met Alvarez-Maldonado, who told her that he would ride with her to the address for the exchange. But within minutes of leaving the bar, the officer stopped her vehicle. Sprayberry further asserted that, although the red container, rolling briefcase, and a bag of meth under the seat that the officers never discovered were hers, she had never seen the blue and yellow Tupperware containers found in the briefcase.

The case against Alvarez-Maldonado then proceeded to trial, during which the State presented the foregoing evidence, including Sprayberry's detailed account of

the transaction leading up to the April 29 traffic stop. The State also introduced numerous text messages recovered from Sprayberry's cell phone, as well as testimony from the investigating officer who recovered that information, which corroborated the account of her communications with Jose and his wife regarding the drug purchase. Additionally, the State introduced a Georgia Bureau of Investigation forensic-chemist report determining that the substance recovered from the Tupperware containers found in the rolling briefcase constituted 296 grams of methamphetamine. Alvarez-Maldonado chose not to testify in his defense. And at the conclusion of the trial, the jury found him guilty on the charges of trafficking in methamphetamine, possession of a false identification document, and giving a false name to a law enforcement officer.[2]

Alvarez-Maldonado later obtained new counsel and filed a motion for new trial, arguing, *inter alia*, that his trial counsel rendered ineffective assistance. The trial court ultimately held a hearing on the matter, during which Alvarez-Maldonado's trial counsel testified regarding his representation. And a few months after the hearing, the trial court denied Alvarez-Maldonado's motion. This appeal follows.

---

[2] The trial court granted Alvarez-Maldonado's motion for directed verdict on the possession-of-cocaine and possession-of-drug-related-objects charges.

1. Alvarez-Maldonado contends that the evidence was insufficient to support his conviction on the charge of trafficking in methamphetamine. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] And, of course, in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] The jury's verdict will be upheld, then, so "long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5] Bearing these guiding principles in mind, we turn to Alvarez-Maldonado's specific challenge to the sufficiency of the evidence.

---

[3] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[4] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

OCGA § 16-13-31 (e) provides:

> Except as authorized by this article, any person who sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in methamphetamine or amphetamine[.]

And the indictment in this matter charged Alvarez-Maldonado with trafficking in methamphetamine by alleging that he "on the 29th day of April, 2017, did then and there unlawfully possess 200 grams or more of a mixture containing methamphetamine, a Schedule II controlled substance, in violation of the Georgia Controlled Substances Act. . . ." So, to establish the crime of trafficking in methamphetamine, the State was required to show only that Alvarez-Maldonado "possessed 28 or more grams of methamphetamine."[6]

Under Georgia law, possession can be "actual or constructive[.]"[7] And a person has actual possession of a thing if he "knowingly has direct physical control of it at

[6] *Smith v. State*, 350 Ga. App. 496, 498 (829 SE2d 776) (2019).

[7] *Reyes v. State*, 322 Ga. App. 496, 497 (1) (745 SE2d 738) (2013) (punctuation omitted).

8

a given time."[8] In addition, a person who—though not in actual possession—"knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it."[9] Importantly, constructive possession must be based on "a connection between the defendant and the object that is more than spatial proximity."[10] As a result, when it is "established wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[11] Nevertheless, questions of reasonableness in this regard are "generally decided by the jury."[12]

In this case, the State presented evidence that a large quantity of methamphetamine was discovered in a vehicle, in which Alvarez-Maldonado was a passenger. Additionally, Sprayberry—the vehicle's owner—testified that Alvarez-Maldonado was, in fact, riding in the vehicle to assist her in completing a drug

---

[8] *Id.* (punctuation omitted).

[9] *Id.* (punctuation omitted).

[10] *Davenport v. State*, 308 Ga. App. 140, 145 (1) (b) (706 SE2d 757) (2011).

[11] *Id.* (punctuation omitted).

[12] *Id.* (punctuation omitted); *see Whaley v. State*, 337 Ga. App. 50, 55 (2) (785 SE2d 685) (2016) (noting that constructive possession is an issue for the jury).

purchase but that the two Tupperware containers of methamphetamine found in the rolling briefcase were not hers. Thus, while OCGA § 24-14-8 provides that corroboration is required to support a guilty verdict in felony cases, when the "only witness is an accomplice, only slight evidence of corroboration is required."[13] But as is true with regard to credibility issues,[14] "the sufficiency of the corroboration is a matter for the jury to decide."[15] And here, Sprayberry's testimony was corroborated by the text messages recovered from her cell phone discussing the drug deal, Alvarez-Maldonado's attempt to use a fake driver's license and his possession of nearly $2,000, as well as the methamphetamine recovered from the vehicle subsequent to Alvarez-Maldonado being left alone while the officer spoke with Sprayberry. Given

---

[13] *Raines v. State*, 304 Ga. 582, 588 (2) (a) (820 SE2d 679) (2018) (punctuation omitted); *accord Gay v. State*, 351 Ga. App. 811, 815 (1) (833 SE2d 305) (2019); *see also* OCGA § 24-14-8.

[14] *See Snipes v. State*, 309 Ga. 785, 788-89 (1) (848 SE2d 417) (2020) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (punctuation omitted)).

[15] *Raines*, 304 Ga. at 588 (2) (a) (punctuation omitted).

these circumstances, there was sufficient evidence to support the jury's finding that Alvarez-Maldonado was in constructive possession of the methamphetamine.[16]

Even so, Alvarez-Maldonado argues that the State failed to present sufficient evidence that the crystal substance found in the blue and yellow Tupperware containers in the rolling briefcase was, in fact, more than 200 grams of methamphetamine. Specifically, he argues that the GBI forensic-chemist report was not properly admitted and did not clarify if the tested substance came from those containers rather than the red Tupperware container, which Sprayberry claimed was hers. These arguments lack merit.

Prior to trial, the parties stipulated to the admissibility of the GBI forensic chemist report. But moments after the State rested its case and the court excused the

---

[16] *See Palencia-Barron v. State*, 318 Ga. App. 301, 303-04 (1) (733 SE2d 824) (2012) (holding that evidence was sufficient to support a finding that defendant was in constructive possession of drugs, and thus his conviction for trafficking in methamphetamine, given that drugs were found in truck in which he was a passenger and truck's driver provided testimony, corroborated by presence of drugs, that defendant knew that they were going to deliver drugs); *Dunn v. State*, 277 Ga. App. 209, 209-10 (1) (626 SE2d 174) (2006) (finding that evidence was sufficient to support conviction for possessing cocaine given that police located cocaine at collision site, on ground next to wrecked car in which defendant was passenger and another passenger testified that defendant ingested cocaine in car just before car wreck, which was corroborated by presence of cocaine at scene, as well as evidence showing that defendant was in car at time of collision).

11

jury for the evening, the State's prosecutor realized that the report and stipulation to its admission had not been admitted into evidence and, therefore, moved to do so. And even though Alvarez-Maldonado's trial counsel acknowledged that he had already stipulated to the report's admission, he, nonetheless, objected on the ground that the State had already rested its case. The trial court subsequently admitted both documents over this objection, and Alvarez-Maldonado, again, challenges that ruling in this appeal. This argument is a nonstarter.

When it comes to the reopening of evidence, the Supreme Court of Georgia has adopted a rather forgiving rule, granting trial courts "very broad discretion in permitting parties to offer additional evidence at any stage of the trial."[17] In fact, our Supreme Court has noted that "leniency in this area is very unlikely to constitute an abuse of discretion, as the appellate courts are guided by [OCGA § 24-1-1], which provides that '[t]he object of all legal investigation is the discovery of truth.'"[18] As

---

[17] *Taylor v. State*, 282 Ga. 502, 504 (3) (651 SE2d 715) (2007); *see Young v. State*, 291 Ga. 627, 630 (4) (732 SE2d 269) (2012) ("Whether to reopen the evidence falls within the sound discretion of the trial court and the exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." (punctuation omitted)).

[18] *Taylor*, 282 Ga. at 504 (3) (punctuation omitted); *see* Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence, p. 9 (6th ed. 2018) (noting that, similar to former OCGA § 24-1-2, the rule in OCGA § 24-1-1 "states as it primary objective 'the discovery of truth'".).

12

a result, even after jury deliberations have begun, the trial court—in the sound exercise of its discretion—may reopen the evidence and allow the admission of new evidence.[19] And here, there is nothing to support Alvarez-Maldonado's contention that the trial court abused its discretion in reopening the evidence to admit a report to which he had already stipulated.[20]

Furthermore, as to Alvarez-Maldonado's claim that it is unclear if the tested substance came from the blue and yellow containers rather than the red Tupperware container (which Sprayberry claimed was hers), we find this contention unavailing as well. Indeed, during the testimony of the arresting officer, the State admitted photographs of the various Tupperware containers, the bag containing the suspected cocaine, and the bags containing the tested samples. Specifically, Exhibit 20—which appears to be the larger of tested samples bag—is labeled "Subm #001A" and listed in the GBI forensic-chemist report as containing 296 grams of methamphetamine. In

---

[19] *See State v. Roberts*, 247 Ga. 456, 458 (277 SE2d 644) (1981) (holding that the trial court did not abuse its discretion in reopening evidence and admitting new evidence upon request by jury after commencement of deliberations).

[20] *See Taylor*, 282 Ga. at 504 (3) (holding that trial court did not abuse its discretion in reopening the evidence after the State had rested to allow the State to play portions of defendant's videotaped statement to police or to present testimony from murder victim's mother).

contrast, Exhibit 19—which is labeled "Subm #001C" but was not tested—indicates that it contains 21 grams of a crystal substance. Thus, the jury could reasonably conclude that the larger bag matched up to the larger amount of methamphetamine.[21] Moreover, in addition to the GBI report itself, the parties also stipulated to a proper chain of custody as it related to the report. Accordingly, the evidence was sufficient to support Alvarez-Maldonado's conviction on the charge of trafficking in methamphetamine.

2. Alvarez-Maldonado further contends that the trial court erred in denying his claim that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence recovered from his cell phones. Specifically, he argues that the warrant issued to search his phones lacked sufficient detail and was overbroad. Again, we disagree.

In order to evaluate Alvarez-Maldonado's claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[22]

---

[21] *See Weyer v. State*, 333 Ga. App. 706, 712 (1) (b) (776 SE2d 304) (2015) (noting that a jury is not required to leave its common sense at the door in resolving a case); *Lanier v. State*, 237 Ga. App. 875, 877 (4) (517 SE2d 106) (1999) ("Jurors are entitled to use their own common sense as intelligent human beings on many questions." (punctuation omitted)).

[22] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[23] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[24] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[25] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[26] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would

---

[23] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[24] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[25] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[26] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

15

have followed such a course."[27] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[28] With these guiding principles in mind, we will now consider Alvarez-Maldonado's claim of error in this regard.

During trial, the State presented the testimony from the investigating officer who recovered the texts and other information from Sprayberry's cell phone. Then, after the State rested, Alvarez-Maldonado's trial counsel informed the court that the same investigating officer also recovered images from *his* client's cell phones, which counsel argued amounted to impermissible Rule 404 (b)[29] evidence that the State

[27] *Id.*

[28] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

[29] *See* OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .").

planned to introduce if his client testified. And for this reason, counsel moved that the evidence be excluded. In response, the State's prosecutor explained that, in searching Alvarez-Maldonado's cell phones, the investigator recovered photographs and images of numerous musicians, as well as those musicians' album art, who were part of a music genre in Mexico known as "narcocorrido"[30] or "drug ballads" and perform songs with drug-cartel related themes. The prosecutor added that the cell phones also contained photographs depicting Jesus Malverde,[31] a fictionalized Mexican patron saint of drug-trafficking, and Joaquin "El Chapo" Guzman,[32] the former leader of the Sinaloa drug-cartel, and noted that while the State never intended to introduce this

---

[30] A narcocorrido (narco-corrido or drug ballad) is a subgenre of the Regional Mexican corrido (narrative ballad) genre, from which several other genres have evolved and lyrics of which tend to speak approvingly of illegal activities, mainly drug trafficking. *See* https://en.wikipedia.org/wiki/Narcocorrido (last visited on March 31, 2021).

[31] Jesús Malverde (literally meaning "Jesus Evil-green" in English), sometimes known as the "narco-saint," is a folklore hero in the Mexican state of Sinaloa, particularly among drug traffickers. *See* https://en.wikipedia.org/wiki/Jesus_Malverde (last visited on March 31, 2021).

[32] Joaquín Archivaldo Guzmán Loera, commonly known as "El Chapo," is a Mexican drug lord and former leader of the Sinaloa Cartel, an international crime syndicate. He is considered to have been the most powerful drug trafficker in the world. *See* https://en.wikipedia.org/wiki/Joaquin_"El_Chapo"_Guzman (last visited on March 31, 2021).

evidence in its case-in-chief, it could serve as impeachment evidence if Alvarez-Maldonado testified. Alvarez-Maldonado's trial counsel countered that the evidence was inadmissible even for impeachment purposes, but the trial court disagreed. The court then held a colloquy with Alvarez-Maldonado regarding his right to testify and whether he wanted to do so. And at its conclusion, Alvarez-Maldonado advised that he would not be testifying, with his trial counsel pointedly noting that his decision was predicated upon the court's ruling that the images from his cell phones would potentially be admissible for impeachment purposes.

Alvarez-Maldonado now contends, as he did in his motion for new trial, that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the above-referenced photographs and images recovered from his cell phones. Specifically, he argues that his trial counsel performed deficiently by failing to challenge the warrant to search his cell phones on the ground that the investigator's supporting affidavit mentioned photographs but did not explain how such images were related to the crime of trafficking, thus rendering the warrant overbroad. He further asserts that this failure was prejudicial because it deterred him from testifying in his own defense based on the possibility that the images would then be used to impeach him. But these claims lack merit.

18

First, the mere failure to present an argument in a motion to suppress "does not constitute per se ineffective assistance of counsel."[33] Rather, the appellant bears the burden of "making a strong showing that, if his counsel had presented the argument, the trial court would have suppressed the evidence."[34] And with regard to search warrants,

> [t]o determine whether probable cause exists to issue a search warrant, the task of the magistrate judge evaluating an application for a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place.[35]

Then, on appellate review, this Court's duty is to "determine if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the search

---

[33] *Reyes-Castro v. State*, 352 Ga. App. 48, 56 (1) (a) (833 SE2d 735) (2019).

[34] *Id.*; *see Smith v. State*, 296 Ga. 731, 733 (2) (a) (770 SE2d 610) (2015) (noting that when trial counsel's failure to file a motion to suppress is the basis for a claim for ineffective assistance, the burden is on the appellant to make a strong showing that the damaging evidence would have been suppressed had counsel made the motion).

[35] *Johnson v. State*, ___ Ga. ___, Slip op. at *22 (4) (b) (Case No. S20A1289; decided January 11, 2021) (punctuation omitted).

19

warrant."[36] And needless to say, a magistrate's decision to issue a search warrant based on a finding of probable cause is "entitled to substantial deference by a reviewing court."[37]

Here, the investigator's affidavit in support of the search warrant for Alvarez-Maldonado's cell phones listed the targets of the search as follows: "All incoming and outgoing phone call lists, all received and sent text messages, voice recordings, all incoming and outgoing photographs, all phone information, all phone books or contact lists, all subscriber and account information associated with the following cell phones . . ." Additionally, in the section of the affidavit providing the facts supporting probable cause, the investigator stated that based on Sprayberry's texts, her supplier, Jose, was "talking to another male in order to exchange the poor quality methamphetamine." The investigator added that "[i]t is probable that [Jose] was communicating with Alvarez using a cell phone in order to coordinate the exchange. . . . Communication between co-conspirators via telephone is common in narcotics distribution."

---

[36] *Id.* (punctuation omitted).

[37] *Id.* (punctuation omitted).

In light of these facts, the investigator's "affidavit provided a 'substantial basis' for the magistrate to determine that probable cause existed for the issuance of a warrant for [Alvarez-Maldonado's cell phones]."[38] Indeed, the affidavit described with sufficient particularity the data to be collected from the phones, which was limited to evidence of trafficking.[39] As a result, given that "an objection to the particularity of the warrant would have been meritless, trial counsel did not perform deficiently by failing to object."[40] Moreover, even if we were to assume for the sake of argument that the search warrant for Alvarez-Maldonado's cell phone and supporting affidavit were impermissibly overbroad, "evidence that was seized illegally may still be admissible for impeachment."[41] Consequently, any objection to

[38] *Id.* at * 23.

[39] *See Rickman v. State*, 309 Ga. 38, 42 (2) (842 SE2d 289) (2020) (finding that search warrants did not lack sufficient particularity where, "read as a whole," they "limited the search of the contents of [defendant]'s cell phones to items reasonably appearing to be connected to [victim]'s murder"); *Westbrook v. State*, 308 Ga. 92, 98 (3) (a) (839 SE2d 620) (2020) (holding that "the use of the phrase 'electronic data' was specific enough to enable a prudent officer to know to look for photographs and videos stored on [defendant]'s cell phone").

[40] *Westbrook*, 308 Ga. at 98 (3) (a).

[41] *McKoy v. State*, 303 Ga. 327, 331 (2) & n.3 (812 SE2d 293) (2018); *see also Hogsed v. State*, 287 Ga. 255, 256 (2) (695 SE2d 269) (2010) (ruling, under the old Evidence Code, that journals obtained outside the scope of a valid search warrant

21

the admission of such images to impeach Alvarez-Maldonado's testimony would have been futile, and "[f]ailure to pursue a futile motion does not constitute ineffective assistance."[42]

For all these reasons, we affirm Alvarez-Maldonado's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier and Colvin, JJ., concur.*

---

could be used "for the limited purpose of impeaching a defendant").

[42] *Hall v. State*, 351 Ga. App. 695, 702 (2) (832 SE2d 669) (2019) (punctuation omitted); *see Ventura v. State*, 284 Ga. 215, 218(4) (663 SE2d 149) (2008) (holding that "[t]he failure to pursue a futile objection does not amount to ineffective assistance.").