307 Ga. 601
FINAL COPY

S19A1004.  WHITE v. THE STATE.

PETERSON, Justice.

Dakota Lamar White appeals his convictions for malice murder and other crimes, stemming from the death of Samuel Poss.[1] A juvenile at the time of his crimes, White alleges errors both in the admission of his confession and in the trial court's decision to sentence him to life without parole. We conclude that White has not

---

[1] Samuel was killed on October 15, 2016. On August 8, 2017, a Houston County grand jury charged White and co-indictee Brandon Warren with malice murder, felony murder (predicated on aggravated assault), two counts of aggravated assault, concealing the death of another, and tampering with evidence. The State objected to White's request for a bench trial, and a jury found White guilty on all counts at a May 2018 trial separate from that of Warren. Following a sentencing hearing held on August 23 and 24, 2018, the trial court on September 4, 2018, sentenced White to life without parole on the malice murder count, plus 10 years' imprisonment each for concealing the death of another and tampering with evidence, consecutive to the malice murder sentence and concurrent to one another. The aggravated assault counts merged, and the felony murder count was vacated by operation of law. (Convicted of murder at his separate trial, Warren also received a sentence of life without parole.) That same day, White filed a motion for new trial, amended by appellate counsel on September 11, December 12, and December 14, 2018. Following a hearing, the trial court denied the motion on January 4, 2019. White filed a timely notice of appeal on January 10, 2019, and the case was docketed to this Court's August 2019 term and orally argued on November 6, 2019.

shown that the trial court committed any reversible error under existing precedent with respect to either decision, and we affirm.

The trial evidence in the light most favorable to the verdicts is as follows. On October 16, 2016, Christian Poss called police to report that his 18-year-old son Samuel was missing. Three days later, after receiving reports pointing to White as a suspect, and without first obtaining an arrest warrant, police arrested White in the doorway of his home. After 17-year-old White arrived at the police station, he waived his *Miranda* rights and submitted to an interview. During the interview, White confessed that he and Brandon Warren had killed Samuel. White then led detectives to Samuel's body.

In his confession, played for the jury at trial, White said that he and Warren had entered into a suicide pact. White reported that he and Warren wanted to know what it was like to kill someone else before they killed themselves. White proposed that they kill his friend Samuel, because he would be an "easy" victim. In the early morning hours of October 15, 2016, White asked Samuel to come to

White's house to help with a computer problem. Samuel agreed, and White and Warren picked up Samuel in White's car and drove to White's Houston County home. Before Samuel could exit the car in White's driveway, White strangled Samuel, and Warren stabbed him. White and Warren left Samuel's body in a creek bed and disposed of other incriminating evidence.

A jury found White guilty of malice murder and the other offenses with which he was charged. After a two-day sentencing hearing, the trial court sentenced White to life without parole on the murder count, plus ten years' imprisonment each for concealing the death of another and tampering with evidence. This appeal followed.

1. Although White does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the evidence presented at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. White argues that his statements to law enforcement should have been suppressed because he was illegally arrested without a warrant and interrogated immediately thereafter.[2] We disagree.

In reviewing a ruling on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions de novo. See *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). In addition, in reviewing such a ruling,

> an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court.

*Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018) (citations and punctuation omitted).

---

[2] In addition to arguing that suppression was required by the Fourth Amendment, White also relies on OCGA § 17-4-20 and Article I, Section I, Paragraph XIII of the Georgia Constitution. But he makes no argument that state law provides a rule substantively different as applied to this case from that of the Fourth Amendment. This case therefore presents no occasion for consideration of whether Paragraph XIII differs from the Fourth Amendment in some circumstances. See *Olevik v. State*, 302 Ga. 228, 234 (2) (b) n.3 (806 SE2d 505) (2017) (noting that the United States Supreme Court's construction of the Fourth Amendment does not bind our construction of Paragraph XIII, and that any independent interpretation of Paragraph XIII must be grounded in the text, context, and history of the Georgia provision).

4

Here, the trial court made oral findings[3] that, before arresting White, law enforcement had been told by White's grandfather that White had behaved oddly after the murder by leaving the windows of his car down. The trial court also found that another one of White's family members had relayed information that White had admitted to his mother that he and someone named Brandon had killed Samuel by stabbing and strangling him. Based on these findings, the trial court concluded that the officers had probable cause to arrest White. The trial court also found the arrest was "appropriate" notwithstanding the absence of a warrant, because law enforcement had reason to believe that White was suicidal, and because the officers later obtained an arrest warrant. The trial court added that any violation of White's rights was "minimal" given that an arresting officer's forearm merely crossed the threshold of the residence's door before White came out of the house. The trial court thereby rejected White's motion to suppress his statements on the grounds that they were the fruit of an illegal arrest.

---

[3] No written order on the motion to suppress appears in the record.

White argues that his statements should have been suppressed because he was interrogated shortly after an illegal warrantless arrest.[4] The Fourth Amendment generally prohibits police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. See *Payton v. New York*, 445 U. S. 573, 576 (100 SCt 1371, 63 LE2d 639) (1980). We have doubts whether the arrest here satisfied the Fourth Amendment. But even if it did not, the trial court properly refused to suppress White's statements.

White cites United States Supreme Court decisions in which the Court held that the defendants' statements, elicited following illegal arrests, should have been suppressed. See *Taylor v. Alabama*, 457 U. S. 687 (102 SCt 2664, 73 LE2d 314) (1982); *Dunaway v. New York*, 442 U. S. 200 (99 SCt 2248, 60 LE2d 824) (1979); *Brown v. Illinois*, 422 U. S. 590 (95 SCt 2254, 45 LE2d 416) (1975). But the

---

[4] White also argues that his "arrest" should be "suppressed," but it is not clear what he means by that. Even where an arrest is unsupported by probable cause, a defendant "cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest." *United States v. Crews*, 445 U. S. 463, 474 (100 SCt 1244, 63 LE2d 537) (1980).

6

Supreme Court has distinguished those cases as involving arrests made without probable cause, making clear that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*." *New York v. Harris*, 495 U. S. 14, 18-21 (110 SCt 1640, 109 LE2d 13) (1990); see also *Almodovar v. State*, 289 Ga. 494, 497 (3) (713 SE2d 373) (2011); *Stinski v. State*, 281 Ga. 783, 785 (2) (b) (642 SE2d 1) (2007). Here, White does not meaningfully challenge the trial court's conclusion that officers had probable cause to arrest him when they did, focusing instead on their failure to obtain a warrant. Indeed, given the trial court's factual findings about the information that White's family members provided to law enforcement, which are supported by the record, we conclude that the trial court did not err in reaching that conclusion. See *Stinski*, 281 Ga. at 785 (2) (c) (probable cause to arrest defendant where officers had been informed by other residents of home where defendant was living that he had admitted

7

killing the victims); see also *Williams v. State*, 298 Ga. 538, 541 (4) (783 SE2d 594) (2016) (probable cause to arrest may be established by hearsay evidence). And White raises no argument that he was interrogated inside of his residence. He therefore has shown no error in the trial court's denial of his motion to suppress his statements.

3. White claims that the trial court committed several reversible errors in its decision to sentence him to life without the possibility of parole. White has not shown that existing precedent offers any basis to vacate his sentence for murder, and we decline to extend that precedent today.

(a) White first argues that the trial court erred by applying a preponderance of the evidence standard in finding that he was eligible for a sentence of life without parole. Relying on the Eighth Amendment and Due Process Clause of the Fourteenth Amendment, White argues that the trial court was required to apply a standard of beyond a reasonable doubt. We find nothing in the existing precedent of the United States Supreme Court or this Court requiring such a conclusion.

Prior to White's trial, the United States Supreme Court held that the Eighth Amendment bars "mandatory life without parole [sentences] for those under the age of 18 at the time of their crimes." *Miller v. Alabama*, 567 U. S. 460, 465 (132 SCt 2455, 183 LE2d 407) (2012). The Court said that the sentencing court must have the discretion to consider "youth and its attendant characteristics, along with the nature of his crime," in deciding whether to impose a lesser sentence, such as life with the possibility of parole. Id. The Court later held in *Montgomery v. Louisiana*, __ U. S. __ (136 SCt 718, 193 LE2d 599) (2016), that *Miller* applies retroactively. This Court subsequently determined that *Miller* meant that life-without-parole sentences for juveniles will be

> *exceptionally rare*, and that determining whether a juvenile falls into that exclusive realm turns not on the sentencing court's consideration of his age and the qualities that accompany youth along with all of the other circumstances of the given case, but rather on a specific determination that he is *irreparably corrupt*.

*Veal v. State*, 298 Ga. 691, 702 (5) (d) (784 SE2d 403) (2016) (emphasis in original).

9

Because White was 17 years old at the time of the murder, the trial court entered a detailed order making findings of fact and conclusions of law in support of its decision to impose a sentence of life without parole. Finding White "is in fact irreparably corrupt," the trial court cited the details of the murder, White's role as the initiator in planning it, and White's attempts to evade being implicated in it. The trial court cited White's "reckless and impulsive behavior" throughout his childhood, even while living primarily in the "normal supportive environment" of his aunt and uncle's home from age three to sixteen. The trial court rejected the defense expert's conclusion that White was not "irretrievably depraved," saying that conclusion was (1) not supported by credible evidence and was (2) based on predictions that "simply cannot be made." The trial court also concluded that there was no evidence that White's youth had placed him at a disadvantage in the adjudicative process.

White argues that, as a matter of due process, the State must prove permanent incorrigibility beyond a reasonable doubt in order for the trial court to sentence him to life without parole. At oral

argument, White's counsel cited *Mathews v. Eldridge*, 424 U. S. 319 (96 SCt 893, 47 LE2d 18) (1976), which some courts have relied on to conclude that due process demands a finding of permanent incorrigibility beyond a reasonable doubt before a juvenile may be sentenced to life without parole. See *Davis v. State*, 415 P3d 666, 682 (Wy. 2018); *Commonwealth v. Batts*, 163 A3d 410, 454-455 (Pa. 2017). But those decisions ignore United States Supreme Court precedent. That Court has made clear that *Mathews* does not apply in the context of a state criminal case. See *Medina v. California*, 505 U. S. 437, 443 (112 SCt 2572, 120 LE2d 353) (1992) ("[T]he *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which . . . are part of the criminal process.").[5] Rather, a state criminal procedure is not prohibited by the federal Due Process Clause "unless it offends some

---

[5] The Court noted in *Medina* that the *Mathews* balancing test was first conceived to address procedural due process claims arising in the context of administrative law, that the Court had invoked *Mathews* to resolve due process claims in criminal law cases on only two occasions, and that it was not at all clear that *Mathews* was essential to the results reached in those cases. *Medina*, 505 U. S. at 444.

principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Id. at 445 (citation and punctuation omitted). The United States Supreme Court has held that "application of the preponderance standard at sentencing generally satisfies due process." *United States v. Watts*, 519 U. S. 148, 156 (117 SCt 633, 136 LE2d 554) (1997). And no Supreme Court decision of which we are aware — much less that White cites — holds that juvenile sentencing of the sort at issue here is an exception to that rule. White has not shown that the burden of proof applied by the trial court here violated his rights under the federal Due Process Clause.

White also argues that *Veal* requires that the trial court find beyond a reasonable doubt that he is irreparably corrupt before sentencing him to life without parole. But nothing in *Veal* says that, and nothing in *Miller* or *Montgomery* says that, either. Moreover, language in *Miller* and *Montgomery* is contrary to White's argument that those cases demand that the State prove permanent incorrigibility beyond a reasonable doubt. See *Montgomery*, 136 SCt

at 735 ("That *Miller did not impose a formal factfinding requirement* does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole." (emphasis added)); id. at 736 ("[*P*]*risoners* . . . must be given *the opportunity to show* their crime did not reflect irreparable corruption." (emphasis added)); *Miller*, 567 U. S. at 477 ("To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences."); id. at 489 ("[A] judge or jury must have the opportunity *to consider* mitigating circumstances before imposing the harshest possible penalty for juveniles." (emphasis added)). We see no reason to go further today than the Supreme Court has already gone, and nothing in its Eighth Amendment case law demands a deviation from the ordinary rule that proof by a preponderance of the evidence is sufficient. And it is undisputed that the General Assembly has not established any special standard of proof for finding a juvenile offender eligible for

13

the sentence of life without parole.[6]

(b) White next argues that, even if the State had to prove his permanent incorrigibility by only a preponderance of the evidence, it failed to do so. We disagree. There was sufficient evidence to support the trial court's determination in this respect.[7] Proof by a

---

[6] Amici curiae supporting White argue that the Sixth Amendment requires proof of irreparable corruption beyond a reasonable doubt before a juvenile is sentenced to life without parole, because any fact that increases the maximum penalty for a crime, other than a prior conviction, must be proven beyond a reasonable doubt. See *Ring v. Arizona*, 536 U. S. 584, 602 (122 SCt 2428, 153 LE2d 556) (2002); *Apprendi v. New Jersey*, 530 U. S. 466, 490 (120 SCt 2348, 147 LE2d 435) (2000). But White has not made such an argument, and, indeed, appeared to disclaim it at oral argument. The United States Supreme Court has not yet said any such thing, and *Montgomery*'s statement that *Miller* did not impose a formal factfinding requirement suggests that such a conclusion would extend *Miller*, not merely apply it. We express no view on that question.

[7] In *Veal*, we relied heavily on *Montgomery* to conclude, as a matter of federal constitutional law, that whether a juvenile may receive a sentence of life without parole depends on "a specific determination that he is *irreparably corrupt*." 298 Ga. at 702 (5) (d) (emphasis in original). We did not specifically hold in *Veal*, however, that this determination amounted to a factual finding, and we did not say who bore the burden of proof to make any particular showing. In considering what burden, if any, the State must bear in securing a life without parole sentence for a juvenile offender, some courts have said that *Miller* does not require trial courts to make any particular factual finding at all. See *People v. Skinner*, 917 NW2d 292, 305 n.11, 309 (Mich. 2018) ("[A] trial court's decision to impose life without parole after considering the mitigating and aggravating circumstances is not a factual finding, but a moral judgment. . . . *Miller* does not require trial courts to make a finding of fact regarding a child's incorrigibility."); *Wilkerson v. State*, __ S3d __, __, (Ala. Crim. App. Nov. 16, 2018) (relying on *Skinner*). And we note that the United

14

preponderance simply requires that the evidence show that something is more likely true than not. See *Zwiren v. Thompson*, 276 Ga. 498, 499 (578 SE2d 862) (2003). The record evidence that the trial court laid out in detail supports the trial court's determination that White is irreparably corrupt.

Relatedly, White argues that the trial court improperly "forced" him to present evidence in mitigation, then relied in part on that evidence in sentencing him to life without parole. At the close of the State's evidentiary presentation at the sentencing hearing, White made a motion asking the court to impose a sentence of life with the possibility of parole, arguing that the State had not met its burden to show that he was eligible for a life without parole sentence. The trial court responded, "I'm going to hold your motion open and I need to hear some more evidence so go ahead and present your first witness." We disagree that this presents a basis to vacate his

States Supreme Court has granted certiorari on the question of whether *Montgomery*, in considering *Miller*'s retroactive effect, "may properly be interpreted as modifying and substantively expanding" *Miller* itself. See *Mathena v. Malvo*, 139 SCt 1317 (Mem.), 203 LE2d 563 (Case No. 18-217, cert. granted March 18, 2019).

sentence.

Although White implies that his lawyers would have been ineffective had they failed to present mitigation evidence after the trial court declined to grant his motion, the trial court did not mandate that they present any particular evidence. And he cites no authority for the strange notion that a trial court considering whether to sentence a juvenile to life without parole may not consider evidence presented by the defense in deciding to do so. Cf. *Cain v. State*, 306 Ga. 434, 436 (1) (831 SE2d 788) (2019) ("[A]n appellate court, when reviewing a trial court's ruling on a motion for directed verdict in a criminal case, is not confined to a review of the evidence at the close of the State's case. The entire evidence is to be examined, and so long as all the evidence justifies the conviction under the appropriate standard, no error is shown by the denial of the motion for directed verdict." (citation and punctuation omitted)). We therefore do not conclude that the trial court's apparent consideration of evidence presented by the defense is a basis to vacate White's sentence.

(c) Finally, White argues that the trial court erred by considering testimony that he gave at Warren's trial, supposedly under a grant of immunity.[8] In two instances in its sentencing order, the trial court cited White's testimony to the effect that, prior to killing Samuel, White had researched the criminal penalties for murder. White argues that his immunized testimony was inadmissible in his sentencing proceeding[9] and thus the sentence must be vacated and a new hearing must be held. But in its order denying the motion for new trial, the trial court stated that the court's decision would be the same even without consideration of that evidence. Therefore, whether or not the trial court erred in considering White's testimony from Warren's trial in sentencing White, White's argument that he is entitled to a new sentencing

---

[8] We note that no order granting White immunity appears in the appellate record.

[9] OCGA § 24-5-507 (a) provides in part:

[N]o testimony or other evidence required under [an order of immunity from prosecution] or any information directly or indirectly derived from such testimony or evidence shall be used against the person in any proceeding or prosecution for a crime or offense concerning which he or she testified or produced evidence under court order.

17

hearing where the testimony is not considered is moot.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 13, 2020.
Murder. Houston Superior Court. Before Judge Lukemire.
*David G. Daniell, Jocelyn P. Daniell*, for appellant.

*George H. Hartwig III, District Attorney, Daniel P. Bibler, Gregory W. Winters, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.

*Sarah L. Gerwig-Moore, Brian Kammer, Mathew Gilbo, Andrea L. Clark, Gabrielle L. Biggs; Mark A. Loudon-Brown, Atteeyah E. Hollie; Melissa D. Carter, Randee J. Waldman, Kaitlyn E. Barnes; Stephen M. Reba*, amici curiae.