309 Ga. 258
FINAL COPY

S20A0181.  RAINES v. THE STATE.

WARREN, Justice.

In 2013, after being convicted of malice murder and other crimes, Dantazias Raines was sentenced to life in prison without the possibility of parole ("LWOP") for malice murder.  Raines was 17 years old at the time of the crimes.[1]  In *Raines v. State*, 304 Ga. 582 (820 SE2d 679) (2018), we affirmed Raines's convictions and sentences in part, reversed Raines's convictions for misdemeanor obstruction of a police officer, and vacated his sentence in part.  We also remanded the case to the trial court for resentencing in accordance with the requirements of *Veal v. State*, 298 Ga. 691, 702-703 (784 SE2d 403) (2016), which relied heavily on *Montgomery v. Louisiana*, ___ U.S. ___ (136 SCt 718, 733-736, 193 LE2d 599)

---

[1] Raines was also sentenced to consecutive terms of years for the other offenses.  Although the main text of our previous opinion in this case mistakenly shows that Raines was sentenced to 40 years in addition to LWOP, our initial footnote in that same opinion correctly states the total number of years as 19.  See *Raines v. State*, 304 Ga. 582, 582 n.1 (820 SE2d 679) (2018).

(2016), to hold that "as a matter of federal constitutional law, . . . whether a juvenile may receive a sentence of life without parole depends on 'a specific determination that he is *irreparably corrupt.*'" *White v. State*, 307 Ga. 601, 607 n.7 (837 SE2d 838) (2020) (quoting *Veal*, 298 Ga. at 702 (emphasis in original)). On remand, Raines filed a motion for a jury to make the requisite determination under *Veal*. The trial court denied his motion and certified its order for immediate review. We granted Raines's application for interlocutory appeal to consider the following question:

> Does a defendant facing a sentence of life without parole for an offense committed when he was a juvenile have a constitutional right to have a jury (as opposed to a judge) make the requisite determination of whether he is "irreparably corrupt" or "permanently incorrigible"?

Pointing to the Sixth Amendment to the United States Constitution, Raines argues that a jury — not a judge — is required to make the determination of whether he is "irreparably corrupt" or "permanently incorrigible" before imposing a sentence of LWOP. The State responds that, given Georgia's statutory scheme for imposing the death penalty — and in particular, because a Georgia

jury that finds beyond a reasonable doubt the facts necessary to return a guilty verdict for malice murder is not required to find additional facts for a defendant to be eligible for LWOP[2] — a defendant does not have a right under the Sixth Amendment for a jury to make the "specific determination" *Veal* requires for a sentence of LWOP to be imposed when that defendant was a juvenile at the time he committed the alleged crimes.

Although the main thrust of Raines's argument stems from the Sixth Amendment, it is made against the backdrop of United States Supreme Court precedent interpreting the Eighth Amendment to the United States Constitution. As such, a complete analysis of Raines's claim requires review of U.S. Supreme Court precedent interpreting both the Sixth and Eighth Amendments. After reviewing the relevant precedents of the U.S. Supreme Court, as well as Georgia statutory law and our own Court's precedent, we

---

[2] Under OCGA § 16-5-1 (a), "[a] person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (e) (1) provides: "A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."

hold that a defendant who is convicted of committing murder when he was a juvenile does not have a federal constitutional right to have a jury determine, in accordance with *Veal* and the Sixth Amendment, whether he is irreparably corrupt or permanently incorrigible such that he may be sentenced to LWOP, and we therefore affirm.[3]

1. *Legal Background.*

(a) *Recent United States Supreme Court Precedent Regarding the Eighth Amendment and Juvenile LWOP.*

In *Miller v. Alabama*, 567 U.S. 460, 465 (132 SCt 2455, 183 LE2d 407) (2012), the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their

---

[3] In his reply brief on appeal, Raines claims for the first time that the Georgia Constitution — separate and apart from the U.S. Constitution — requires a specific and distinct determination of irreparable corruption before a juvenile is eligible for a sentence of LWOP, and thus provides an independent basis for this Court to recognize the right to a jury finding in this case. But Raines does not cite a specific provision in the Georgia Constitution other than a passing reference to Article I, Section I (the Bill of Rights), did not raise this issue in the motion he made on remand, and did not obtain a ruling from the trial court on it. "Because the *State* constitutional issue was not raised or ruled on below, it is waived on appeal." *Brockman v. State*, 292 Ga. 707, 731 (739 SE2d 332) (2013) (emphasis in original). See also *Johnson v. State*, 302 Ga. 774, 781 n.6 (809 SE2d 769) (2018).

crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" As a result, the Court required "a sentencer . . . to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," and it specifically noted that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Id. at 480, 489. Four years later, in *Montgomery*, __ U.S. at __ (136 SCt at 734, 736), the Supreme Court held that *Miller* announced a new substantive rule of constitutional law that must be given retroactive effect in state collateral review proceedings. In so doing, the Court emphasized that *Miller*'s rationale was one of proportionality; because *Miller* concluded that "the sentence of life without parole is disproportionate for the vast majority of juvenile offenders," *Montgomery*, ___ U.S. at ___ (136 SCt at 736), sentencing a juvenile to LWOP is "excessive for all but '"the rare juvenile offender whose crime reflects irreparable corruption,"'" id. at ___ (136 SCt at 734)

(quoting *Miller*, 567 U.S. at 479-480).[4]

(b) *Recent Supreme Court of Georgia Precedent Interpreting Miller and Montgomery.*

The same year *Montgomery* was decided, in *Veal*, 298 Ga. 691, our Court held that, under the U.S. Supreme Court's holding in *Montgomery*, *Miller* announced a rule of substantive constitutional law and that an LWOP sentence imposed on a juvenile in violation of that rule was void. See *Veal*, 298 Ga. at 701. We further concluded that, to ensure principles of proportionality were satisfied under the Eighth Amendment ("as interpreted in *Miller* and as refined by *Montgomery*"), a trial court must make a "distinct determination" that the defendant is an "exceptionally rare" juvenile who is "*irreparably corrupt*" or "whose crimes reflect *permanent incorrigibility*" before sentencing a juvenile convicted of murder to life without parole. *Veal*, 298 Ga. at 701-703 (emphasis in original).

---

[4] The Supreme Court may further address the parameters of *Miller* and *Montgomery* in the near future. See *Jones v. Mississippi*, ___ U.S. ___ (140 Sct 1293, 206 LE2d 374) (Mem.) (cert. granted Mar. 9, 2020). Cf. *Mathena v. Malvo*, ___ U.S. ___ (140 SCt 919, 206 LE2d 250) (Mem.) (cert. dismissed Feb. 26, 2020).

See also *Veal v. State*, 303 Ga. 18, 19-20 (810 SE2d 127) (2018) (declining to extend this rule beyond the holdings of *Miller* and *Montgomery* to aggregate life-with-the-possibility-of-parole sentences for juveniles convicted of multiple offenses).

(c)*Recent United States Supreme Court Sixth Amendment Precedent: Apprendi and Its Progeny*.

In *Apprendi v. New Jersey*, the Supreme Court held that under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (120 SCt 2348, 147 LE2d 435) (2000) (emphasis supplied). Its holding reflected the historical "principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt." Id. at 483-484. The Court has reiterated that central tenet through a litany of Sixth Amendment cases including *Ring v. Arizona*, 536 U.S. 584 (122 SCt 2428, 153 LE2d 556) (2002); *Blakely v. Washington*, 542 U.S. 296 (124 SCt

2531, 159 LE2d 403) (2004); *United States v. Booker*, 543 U.S. 220 (125 SCt 738, 160 LE2d 621) (2005); *Cunningham v. California*, 549 U.S. 270 (127 SCt 856, 166 LE2d 856) (2007); *Oregon v. Ice*, 555 U.S. 160 (129 SCt 711, 172 LE2d 517) (2009); *Southern Union Co. v. United States*, 567 U.S. 343 (132 SCt 2344, 183 LE2d 318) (2012); *Alleyne v. United States*, 570 U.S. 99 (133 SCt 2151, 186 LE2d 314) (2013); *Hurst v. Florida*, 577 U.S. 92 (136 SCt 616, 193 LE2d 504) (2016); and *United States v. Haymond*, ___ U.S. ___ (139 SCt 2369, 204 LE2d 897) (2019).

For example, in *Ring v. Arizona*, the Court held that an Arizona statute that required trial judges to make a finding of at least one aggravating circumstance to impose the death penalty violated the Sixth Amendment. See 536 U.S. at 609. In so doing, it repeated that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt." Id. at 602 (citing *Apprendi*, 530 U.S. at 482-483). Moreover, it explained that a "defendant may not be exposed

. . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.* at 602 (quoting *Apprendi*, 530 U.S. at 483) (punctuation and emphasis omitted). Because the Arizona statute required an aggravating circumstance to be found and allowed the death penalty to be imposed only upon a finding of at least one such circumstance, the statutory aggravating factors "operate[d] as 'the functional equivalent of an element of a greater offense'" and the Sixth Amendment required a jury — not a judge — to make the finding. *Id.* at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19). See also *Hurst*, 577 U.S. at 95, 103 (extending *Ring* to invalidate Florida's capital sentencing scheme, where under Florida statutory law, "the maximum sentence a capital felon [could] receive on the basis of the conviction alone [was] life imprisonment," and under the Florida sentencing statute, the death penalty was available only if "the judge alone" found "the existence of an aggravating circumstance").

Along the same lines, the Supreme Court has clarified that the relevant "statutory maximum" for a sentence "'is not the maximum

sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.'" *Cunningham*, 549 U.S. at 283 (quoting *Blakely*, 542 U.S. at 303-304) (emphasis in original). In other words, in evaluating the statutory maximum for a sentence for Sixth Amendment purposes, the relevant inquiry is what "the jury's verdict alone . . . allow[s]." *Blakely*, 542 U.S. at 304. Given these principles, the Supreme Court concluded that a California law requiring a trial judge to "find the facts that expose a defendant to an elevated 'upper term' sentence," *Cunningham*, 549 U.S. at 274, and a Washington law that allowed a trial judge to "impose a sentence above the standard range if he finds 'substantial and compelling reasons justifying an exceptional sentence,'" *Blakely*, 542 U.S. at 299, violated the Sixth Amendment.

More recently, in *Oregon v. Ice*, the Court emphasized that its "opinions make clear that the Sixth Amendment does not countenance legislative encroachment on the jury's traditional domain" and that "*Apprendi*'s core concern" is "a legislative attempt to remove from the province of the jury the determination of facts

that warrant punishment for a specific statutory offense." *Ice*, 555 U.S. at 168, 170 (citation and punctuation omitted).

2. *United States Supreme Court Precedent Does Not Require Georgia Juries to Determine Whether a Defendant Convicted of Committing Murder When He Was a Juvenile Is "Irreparably Corrupt" or "Permanently Incorrigible" Such That He Would Be Eligible For a Sentence of LWOP.*[5]

On appeal, Raines argues that under the Sixth Amendment, a jury — and not a judge — is required to make the specific determination of whether a juvenile is irreparably corrupt before

---

[5] Here, as in *Veal*, 298 Ga. 691, we discern no material difference between a determination that a juvenile is "irreparably corrupt" as opposed to one that he is "permanently incorrigible." That is because in characterizing *Miller*, the *Montgomery* Court explained that "*Miller* determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects *irreparable corruption*," and also that *Miller* "did bar life without parole . . . for all but the rarest of juvenile offenders, those whose crimes reflect *permanent incorrigibility*." __ SCt at __ (136 SCt at 734) (citations and punctuation omitted; emphasis supplied). And in *Veal*, we acknowledged *Montgomery*'s reference (in interpreting *Miller*) to "a specific determination that [a juvenile] is *irreparably corrupt*" as well as its reference to the "*rarest* of juvenile offenders . . . whose crimes reflect *permanent incorrigibility*," emphasizing that the trial court in that case was required to make a "distinct determination on the record that Appellant is irreparably corrupt or permanently incorrigible." 298 Ga. at 702-703 (citation and punctuation omitted; emphasis in original). Accordingly, for ease of reference only, except when "irreparably corrupt" and "permanent incorrigibility" are both quoted in case law, we will use only the term "irreparably corrupt" when noting the Eighth Amendment determination imposed by *Miller* (as explained in *Montgomery*).

imposing a sentence of LWOP.  Raines's argument is based on the Sixth Amendment principles set forth in *Apprendi*, and he points to *Ring v. Arizona* as controlling authority here.

The primary thrust of Raines's argument is that the Arizona statute determined to be unconstitutional in *Ring* — which, as Raines describes it, required a trial judge to find at least one aggravating circumstance to "increase the authorized punishment from life to death" — is analogous to Georgia's statutory sentencing scheme for murder, and that a sentence of juvenile LWOP would be similarly void in Georgia if a jury did not make the specific finding that the defendant was irreparably corrupt. As Raines explains it, in Arizona "a death sentence was not authorized by the jury verdict alone, so the finding of an aggravating factor had to be made by a jury" under the Sixth Amendment.  By comparison, he argues, the maximum punishment Raines can receive in Georgia based on the jury verdict alone is life with the possibility of parole.  That is because, Raines asserts, for a person convicted of murder, OCGA § 16-5-1 (e) (1) authorizes a sentence of life in prison with the

possibility of parole, life without parole, or death, but the Eighth Amendment prohibits the death penalty for juveniles, see *Roper v. Simmons*, 543 U.S. 551 (125 SCt 1183, 161 LE2d 1) (2005); a sentence of LWOP is authorized only upon a specific finding that a juvenile is irreparably corrupt; and a finding of irreparable corruption "increases the authorized punishment for a child to life without parole," and under *Ring* therefore must be made by a jury beyond a reasonable doubt.

Inherent in Raines's argument, however, are a number of assumptions — including (a) that the statutory maximum sentence a juvenile can receive in Georgia is life in prison with the possibility of parole; (b) that juvenile LWOP is therefore an *enhanced* sentence; and (c) that a *Veal* determination of irreparable corruption is a factfinding that must be made by a jury. We examine each of those assumptions as part of our analysis below.

(a) *Whether the Statutory Maximum Sentence a Juvenile Can Receive in Georgia Is LWOP: Applying Apprendi to Georgia's Murder Sentencing Statute.*

First, Raines argues that "the maximum punishment [he] can

receive without any judge-made findings is life with the possibility of parole." He equates the "maximum punishment" with the "statutory maximum" under *Apprendi* and its progeny—i.e., the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303-304 (emphasis omitted) (maximum sentence for Sixth Amendment purposes was not the ten-year maximum authorized by the Washington statute, because the statute required a trial judge to make additional factual findings beyond the jury verdict to authorize the maximum ten-year sentence). See also *Cunningham*, 549 U.S. at 293; *Hurst*, 577 U.S. at 95-96 (136 SCt at 620). But that argument conflates the Supreme Court's Sixth Amendment analysis from *Apprendi* with its analysis in Eighth Amendment precedent.

Once those lines of authority are disentangled, however, we are able to determine the following. We have already held that Georgia's murder sentencing statute passes constitutional muster under the Sixth Amendment and *Apprendi* because OCGA § 16-5-1

(e) (1) authorizes a sentence of LWOP for a defendant convicted of murder, and a jury verdict finding a defendant guilty of murder demonstrates that the jury has found beyond a reasonable doubt all of the facts necessary to render a defendant eligible for a sentence of LWOP under the relevant statute. See *Lewis v. State*, 301 Ga. 759, 767 (804 SE2d 82) (2017) ("The language of the murder statute clearly states the range of sentences that may be imposed upon conviction. It clearly establishes that no additional facts are required to be found by the jury for the imposition of life without parole.") (citation omitted); *Babbage v. State*, 296 Ga. 364, 368 (768 SE2d 461) (2015) ("[L]ife without parole is now within the range of statutorily authorized punishments . . . . Because life without parole falls *within* the statutory range, *Apprendi* simply does not apply to this sentencing scheme.") (emphasis in original). See also *Ring*, 536 U.S. at 602 (a "defendant may not be exposed . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone") (citation, punctuation and emphasis omitted).

Moreover, the analysis of the "maximum sentence" available under the state statutes deemed unconstitutional in the Supreme Court's Sixth Amendment cases does not mandate the same outcome for the statutory scheme at issue here. That is because in each of those cases, a state statute specifically authorized a maximum sentence and also specifically required a judge to make an additional factfinding — apart from the jury's verdict — to authorize imposition of that maximum sentence.[6] Under Georgia's statutory scheme, by contrast, OCGA § 16-5-1 (e) (1) authorizes imposition of

---

[6] See, e.g., *Apprendi*, 530 U.S. at 468-469 (maximum sentence for Sixth Amendment purposes was the ten-year maximum authorized by the New Jersey statute, because the statute required a trial judge to find facts beyond the jury verdict to authorize an extended term of imprisonment for between ten and twenty years); *Ring*, 536 U.S. at 603-604 (maximum sentence for Sixth Amendment purposes was not the death penalty authorized by the Arizona statute, because the statute required a judge to find at least one aggravating circumstance to authorize the sentence of death instead of life imprisonment); *Blakely*, 542 U.S. at 303-304 (maximum sentence for Sixth Amendment purposes was not the ten-year maximum authorized by the Washington statute, because the statute required a trial judge to make additional factual findings beyond the jury verdict to authorize the maximum ten-year sentence); *Cunningham*, 549 U.S. at 292-293 (maximum sentence for Sixth Amendment purposes was 12 years and not 16 years, because a California statute required a judge to find facts to authorize an elevated sentence of 16 years); *Hurst*, 577 U.S. at 99 (where a jury verdict for first-degree murder authorized only a sentence of LWOP and a Florida statute required a judge to make additional factfindings to increase punishment to the death penalty, the maximum sentence for Sixth Amendment purposes was LWOP).

an LWOP sentence, and no Georgia statute requires a judge to make additional factfindings to impose that sentence. The prohibition against imposing the death penalty on juveniles and the requirement that a specific determination of irreparable corruption be made before imposing a sentence of LWOP on a juvenile are *constitutional* constraints imposed by the Supreme Court's interpretation of the Eighth Amendment — not by any Georgia statute. See also Division 2 (c), below.

To that end, it is undisputed that in interpreting the Eighth Amendment, the United States Supreme Court has held that a sentence of death cannot be imposed on a juvenile. *Roper*, 543 U.S. at 578. And although it has not held that a sentence of life without parole is barred categorically for juvenile offenders, it has, through *Miller*, "rendered life without parole an unconstitutional penalty for a class of defendants . . . that is, juvenile offenders whose crimes reflect the transient immaturity of youth," *Montgomery*, ___ U.S. at ___ (136 SCt at 734) (citation and punctuation omitted). As such, juveniles who face the prospect of a sentence of life without parole

"must be given the opportunity to show their crime did not reflect irreparable corruption." Id. at ___ (136 SCt at 736). But those holdings are based on the Supreme Court's Eighth Amendment jurisprudence, and specifically on principles of proportionality—not on Sixth Amendment principles of the historical right to a jury trial. See, e.g., *Montgomery*, ___ U.S. at ___ (136 SCt at 726) ("Although *Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a *disproportionate sentence* for all but the rarest of children, those whose crimes reflect 'irreparable corruption.'") (citation and punctuation omitted; emphasis supplied); *Miller*, 567 U.S. at 489 (stating that the Court was applying the "principle of proportionality" under the Eighth Amendment "that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles"); *Veal*, 298 Ga. at 703 (discussing the "distinct determination on the record" that must be made in a juvenile LWOP case to ensure that a defendant "is irreparably corrupt or permanently incorrigible, as

necessary to put him in the narrow class of juvenile murderers *for whom an LWOP sentence is proportional* under the Eighth Amendment as interpreted in *Miller* as refined by *Montgomery*") (emphasis supplied).

In other words, although the Supreme Court's Eighth Amendment precedents impose separate constitutional restrictions on the types of punishment that may be imposed on a juvenile, they do not answer whether OCGA § 16-5-1 (e) (1) satisfies the Sixth Amendment. Indeed, they do not speak to what punishment a state statute authorizes for a given offense or whether the "facts reflected in the jury verdict alone" would authorize a given punishment under that state statute, see *Ring*, 536 U.S. at 602, and Raines points to no binding authority that holds otherwise.

(b) *Whether Juvenile LWOP Is an Enhanced Sentence.*

Second, and relatedly, Raines presumes that juvenile LWOP is an *enhanced* sentence (as contemplated in *Apprendi* and its Sixth Amendment progeny) because the Supreme Court's Eighth Amendment precedent has so greatly restricted the availability of

that sentence for juveniles and thus "requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Montgomery*, ___ U.S. at ___ (136 SCt at 734). But neither *Miller* nor *Montgomery*'s Eighth Amendment analysis of juvenile LWOP characterized juvenile LWOP as a sentence that increases or aggravates the penalty a juvenile faces, or as one that exceeds the statutory maximum.

Moreover, before it decided *Apprendi*, the Supreme Court held that where the principles of proportionality embodied in the Eighth Amendment barred the imposition of a particular punishment on a class of persons otherwise subject to that punishment under state law, neither the Sixth Amendment nor any other constitutional provision required a jury to find the facts necessary to determine if the offender was subject to that constitutionally-imposed restriction. See *Cabana v. Bullock*, 474 U.S. 376, 385-386 (106 SCt 689, 88 LE2d 704) (1986) (although the Eighth Amendment, unlike the Mississippi capital murder statute and jury instructions in that

case, forbids imposition of the death penalty unless the defendant himself killed, intended to kill, or attempted to kill, that required finding is not one that a jury must make), overruled in part on other grounds, *Pope v. Illinois*, 481 U.S. 497, 503 n.7 (107 SCt 1918, 95 LE2d 439) (1987). Notably, the Supreme Court has not overruled this aspect of *Cabana*, including in *Apprendi* or its Sixth Amendment progeny or in Eighth Amendment cases such as *Miller* or *Montgomery*.[7] See *People v. Blackwell*, 207 Cal. Rptr. 3d 444, 465 (Cal. App. 2016) ("The high court has never explicitly overruled *Cabana*'s holding that a judge may make the Eighth Amendment

---

[7] We also note that, in the context of the Eighth Amendment prohibition on imposing the death penalty on defendants who are intellectually disabled, the Supreme Court in *Schriro v. Smith*, 546 U.S. 6, 7-8 (126 SCt 7, 163 LE2d 6) (2005) (per curiam), vacated the Ninth Circuit Court of Appeals's judgment directing Arizona's state courts to conduct a jury trial to resolve the defendant's claim that he was intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (122 SCt 2242, 153 LE2d 335) (2002). In so doing, the Court rejected the Ninth Circuit's attempt to "command[ ] the Arizona courts to conduct a jury trial to resolve" the defendant's claim of what is now known as intellectual disability — a factor implicating Eighth Amendment restrictions on a defendant's potential sentence — before the state "had a chance to apply its chosen procedures" for "adjudicating [such] claims." *Schriro*, 546 U.S. at 7.

findings mandated by *Enmund* and *Tison*.”);[8] *People v. Skinner*, 917 NW2d 292, 309 n.17 (Mich. 2018) (“While *Cabana* was decided before *Apprendi*, state and lower federal courts since *Apprendi* have held that the Sixth Amendment does not require that a jury make the *Enmund/Tison* findings.”). All of these considerations lead us to conclude that where LWOP is authorized by state statute, juvenile LWOP does not constitute a “sentence enhancement” for Sixth Amendment purposes — and thus does not require that a jury make specific findings to justify imposition of that sentence — even when the Eighth Amendment has imposed additional constitutional limitations on the availability of that sentence.

(c) *Veal Does Not Require Factfinding.*

Finally, Raines’s argument is predicated on the assumption

---

[8] See *Enmund v. Florida*, 458 U.S. 782, 797 (102 SCt 3368, 73 LE2d 1140) (1982) (holding that the Eighth Amendment prohibits “imposition of the death penalty on one . . . who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed”); *Tison v. Arizona*, 481 U.S. 137, 158 (107 SCt 1676, 95 LE2d 127) (1987) (holding that “major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement”).

that the "specific determination" of irreparable corruption that *Veal* (following *Miller* and *Montgomery*) requires for a juvenile offender to be sentenced to LWOP is the type of "fact" *Apprendi* contemplated when the Supreme Court held that any "fact" that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" must be found by a jury.  See *Veal*, 298 Ga. at 702; *Apprendi*, 530 U.S. at 494.  As we have explained above, the Supreme Court has not characterized juvenile LWOP as an enhanced punishment.  Additionally, neither the Supreme Court in *Miller* and *Montgomery*, nor our Court in *Veal*, characterized the determinations of irreparable corruption required by *Miller* and *Montgomery* as a factfinding — let alone a factfinding that must be made by a jury.

To the contrary, in referencing the decisionmaker who must generally determine whether a defendant who was a juvenile at the time of his crimes is irreparably corrupt such that he is eligible for LWOP, the Supreme Court repeatedly has used terms like "sentencer," "sentencing authority," "sentencing court," and

"sentencing judge." *Montgomery*, ___ U.S. at ___ (136 SCt at 726, 733, 734); *Miller*, 567 U.S. at 465, 474, 478-480, 483, 489. The Court even went so far in *Montgomery* as to emphasize that "*Miller* did not impose a formal factfinding requirement." *Montgomery*, ___ U.S. at ___ (136 SCt at 735). See also *White*, 307 Ga. at 606 n.6 ("*Montgomery*'s statement that *Miller* did not impose a formal factfinding requirement suggests that such a conclusion would extend *Miller*, not merely apply it.").

Likewise, in *White*, our Court recently explained that although *Veal* requires a "specific determination" that a defendant who was a juvenile at the time of his crimes is "*irreparably corrupt*," *Veal*, 298 Ga. at 702 (emphasis in original), "[w]e did not specifically hold in *Veal* . . . that this determination amounted to a factual finding." *White*, 307 Ga. at 607 n.7.[9] See also *Veal*, 298 Ga. at 699 (OCGA §

---

[9] In *White*, the defendant — who was a juvenile at the time he committed the murder and other crimes for which he was convicted — argued (among other things) that under the Eighth Amendment, the trial court "erred by applying a preponderance of the evidence standard," as opposed to a beyond a reasonable doubt standard, "in finding that he was eligible for a sentence of life without parole" and that "*Veal* requires that the trial court find beyond a

16-5-1 (e) (1) gives "the *sentencing court* discretion over the sentence to be imposed after consideration of all the circumstances in a given case, including the age of the offender and the mitigating qualities that accompany youth") (citation and punctuation omitted; emphasis supplied).  That is because the purpose of our requirement in *Veal* of a "distinct determination on the record" that the defendant is "irreparably corrupt or permanently incorrigible," id. at 703, was to ensure that the trial court exercised its sentencing discretion in compliance with the Eighth Amendment principles of proportionality set forth in *Miller* and *Montgomery* — that is, to ensure that a juvenile LWOP sentence is limited to the "narrow class" of "exceptionally rare," "worst-of-the-worst juvenile murderers." *Veal*, 298 Ga. at 702-703 (emphasis omitted).  And that

reasonable doubt that he is irreparably corrupt before sentencing him to life without parole."  Id. at 604-606.  We rejected those arguments.  With respect to White's Eighth Amendment argument, we explained that "[w]e [found] nothing in the existing precedent of the United States Supreme Court or this Court requiring such a conclusion."  Id. at 604.  We similarly rejected White's *Veal* argument, noting that "nothing in *Veal* says that, and nothing in *Miller* or *Montgomery* says that, either" and that we saw "no reason to go further . . . than the Supreme Court has already gone."  *White*, 307 Ga. at 606.

purpose is fulfilled when a judge makes the requisite determination. See *Montgomery*, ___ U.S. at ___ (136 SCt at 733) (given the "risk of disproportionate punishment" juvenile LWOP presents, "*Miller* requires that before sentencing a juvenile to life without parole, *the sentencing judge* take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison") (citation and punctuation omitted; emphasis supplied).

It is true that in discussing Eighth Amendment proportionality principles in *Miller*, the Supreme Court noted that "a *judge or jury* must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 U.S. at 489 (emphasis supplied). But *Miller*'s reference to a jury simply recognized that states may allow either judges or juries to determine sentences in some or all criminal cases; the disjunctive wording cannot be read as requiring a jury to impose the penalty in

all cases.[10]  Moreover, a state may choose to pass legislation requiring a jury to determine whether a juvenile is irreparably corrupt before allowing the juvenile to be sentenced to life without parole, though the General Assembly has not chosen to do so in Georgia.  Cf. *White*, 307 Ga. at 606 (in holding that this Court saw "no reason to go further today than the Supreme Court has already gone" in deciding whether a trial court must, under *Veal*, "find beyond a reasonable doubt that he is irreparably corrupt before sentencing him to life without parole," noting that "it is undisputed that the General Assembly has not established any special standard of proof for finding a juvenile offender eligible for the sentence of life without parole"); *Montgomery*, ___ U.S. ___ (136 SCt at 735) ("When a new substantive rule of constitutional law is established, this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the

---

[10] Juries determined most sentences in Georgia until 1974, see *Jones v. State*, 233 Ga. 662, 663 (212 SE2d 832) (1975), and in Texas, for example, "[d]efendants have the right to have a jury assess their punishment," *Ette v. State*, 559 SW3d 511, 515 (Tex. Crim. App. 2018) (citing Tex. Code Crim. Proc. art. 37.07 § 2 (b)).

States' sovereign administration of their criminal justice systems.").

For his part, Raines — apparently recognizing that *Miller*'s reference to the "judge" portion of the "judge or jury" phrase undermines his Sixth Amendment argument that a jury is required to make the *Veal* determination — argues that the "judge or jury" reference in *Miller* is merely dicta, but that it is, in any event, unconcerning since a juvenile can waive his right to a jury, thus requiring a judge to make the requisite determination of irreparable corruption before imposing a sentence of LWOP. Far from undermining our conclusion that a jury is not required to make the *Veal* determination of irreparable corruption for Georgia defendants convicted of murder committed when they were juveniles, these competing points demonstrate that both the "judge" and "jury" components of *Miller*'s phrase have real meaning and may apply to any given juvenile LWOP case, depending on the state statutory sentencing scheme at issue. In any event, *Miller*'s "judge or jury" reference and *Montgomery*'s "sentencing judge" reference — both in dicta — undermine any reading of those cases as *holding* that only

a jury may make the irreparable corruption determination, and nothing in either opinion suggests that the Supreme Court mentioned sentencing judges and courts for the exclusive purpose of anticipating the rare situation where juveniles waive the right to a jury trial.

But even if the determination that we required in *Veal* to ensure that trial courts were properly understanding and exercising their sentencing discretion in juvenile murder cases were instead considered a "factfinding,"[11] Raines's argument fails to account for

_____

[11] For example, Raines argues that "'the relevant inquiry is one not of form, but effect," *Ring*, 536 U.S. at 604 (quoting *Apprendi*, 530 U.S. at 494). He also argues that Black's Law Dictionary defines a "finding of fact" as a "*determination* by a judge, jury, or administrative agency of a fact supported by the evidence in the record." (emphasis supplied). While every "finding of fact" may be a "determination," not every "determination" made by a judge is a "finding of fact." See, e.g., *Westbrook v. State*, 308 Ga. 92, 99 (839 SE2d 620) (2020) ("We review a trial court's *determination* that a lineup was not impermissibly suggestive for an abuse of discretion.") (emphasis supplied); *Winters v. State*, 305 Ga. 226, 228 (824 SE2d 306) (2019) ("A trial court's *determination* regarding the admissibility of evidence is reviewed for an abuse of discretion.") (emphasis supplied).

We also note that the Supreme Court majority in *Alleyne* explained that its holding that "facts that increase mandatory minimum sentences must be submitted to the jury . . . does not mean that any fact that influences judicial discretion must be found by a jury." 570 U.S. at 116. The Court continued: "We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." Id. Relying on

the later Sixth Amendment case of *Oregon v. Ice*, which emphasizes that *Apprendi*'s "core concern" is the "*legislative* attempt to remove from the (province of the) jury the determination of facts that warrant punishment for a specific statutory offense." 555 U.S. at 170 (citation and punctuation omitted; emphasis supplied). See also id. at 168 ("[O]ur opinions make clear that the Sixth Amendment does not countenance *legislative* encroachment on the jury's traditional domain.") (emphasis supplied); *Apprendi*, 530 U.S. at 490 ("It is unconstitutional for a *legislature* to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.") (citation and punctuation omitted; emphasis supplied).

The Supreme Court has never held that the Sixth Amendment concerns implicated by *Apprendi* extend to non-statutorily

---

our opinion in *Veal*, Raines argues that this aspect of *Alleyne* "no longer applies" in juvenile LWOP cases. But that is not so. Although *Veal* recognized that "[t]he *Montgomery* majority's characterization of *Miller* undermine[d] this Court's cases indicating that trial courts have significant discretion in deciding whether" to impose juvenile LWOP, *Veal*, 298 Ga. at 702, that statement merely acknowledged the import of *Montgomery*'s reading of *Miller* and neither cited nor diminished the Supreme Court's conclusions in *Alleyne*.

prescribed factfindings such as the constitutionally required factfindings (assuming for the sake of argument that a *Veal* determination is, indeed, a factfinding) at issue here. See *Blackwell*, 207 Cal. Rptr. 3d at 464 ("[W]e know of no authority directly holding *Apprendi* applicable to such constitutionally prescribed facts."); 6 Wayne R. LaFave et al., Criminal Procedure § 26.4 (i) (4th ed., Dec. 2019 Update) ("So far, lower courts have rejected arguments to equate the factors which as a matter of Eighth Amendment law are required for death eligibility with elements [of a crime]."). Cf. *Cabana*, 474 U.S. at 385-386. Indeed, all of the *Apprendi*-line cases in which the Supreme Court has invalidated a sentencing law or guideline on Sixth Amendment grounds involve statutes or statutorily authorized sentencing guidelines that require judges — not juries — to find legislatively specified facts. See, e.g., *Apprendi*, 530 U.S. at 468-469 (invalidating New Jersey statute that required a judge to find facts beyond the jury verdict to authorize an extended term of imprisonment for between ten and twenty years); *Ring*, 536 U.S. at 603-604 (invalidating Arizona statute that required a judge

to find at least one aggravating factor in murder cases before imposing a sentence of death); *Blakely*, 542 U.S. at 303-304 (invalidating Washington statute that required a judge to make additional factual findings beyond the jury verdict to authorize the maximum sentence); *Booker*, 543 U.S. at 226-227 (Sixth Amendment applies to Federal Sentencing Guidelines promulgated pursuant to statute that requires a judge to find an additional fact that mandates a higher sentence); *Cunningham*, 549 U.S. at 293 (invalidating California statute that required a judge to find facts to authorize an elevated sentence); *Hurst*, 577 U.S. at 99 (136 SCt at 622) (invalidating Florida statute that required a judge to make additional factfindings to increase punishment to the death penalty); *Haymond*, ___ U.S. at ___ (139 SCt at 2373) (invalidating federal statute that authorized a mandatory minimum sentence based on a judge's factfinding). As we recently concluded in *White*, "[w]e see no reason to go further today than the Supreme Court has already gone," and nothing in its Sixth or Eighth Amendment case

law demands otherwise.  See *White*, 307 Ga. at 606.[12]

---

[12] We note that our conclusion is consistent with the great weight of authority from other jurisdictions across the country.  See, e.g., *McGilberry v. State*, 292 S3d 199, 206-207 (Miss. 2020) (affirming intermediate appellate court's rejection of juvenile's "claim to a constitutional right to have a jury in a *Miller* hearing," because "there is no Sixth Amendment *Apprendi* issue" and "there is no constitutional requirement that the 'sentencer' be a jury") (emphasis omitted); *Skinner*, 917 NW2d at 311 ("[A]ll the courts that have considered this issue have likewise concluded that the Sixth Amendment is not violated by allowing the trial court to decide whether to impose life without parole.") (collecting cases); *Commonwealth v. Batts*, 163 A3d 410, 456 (Pa. 2017) ("We further disagree with Batts[, who relied on *Alleyne*,] that a jury must make the finding regarding a juvenile's eligibility to be sentenced to life without parole."); *Beckman v. State*, 230 S3d 77, 95-97 (Fla. App. 2017) (juvenile sentencing procedure that was enacted in response to *Miller* and required the trial court, not the jury, to consider the defendant's "youth and attendant circumstances" "does not violate the Sixth Amendment under *Apprendi* and its progeny") (citation and punctuation omitted); *Blackwell*, 207 Cal. Rptr. 3d at 466 ("*Miller* does not require irreparable corruption be proved to a jury beyond a reasonable doubt . . . .  We find no constitutional . . . requirement that this exercise be accomplished by a jury."); 6 LaFave, supra at § 26.4 (i) ("[C]ourts have rejected arguments that *Apprendi* reaches the factors listed in *Miller* that must be considered before imposing a life without parole sentence on a juvenile offender in order to comply with the Eighth Amendment.").  Cf. *Wilkerson v. State*, 284 S3d 937, 951-955 (Ala. Crim. App. 2018) (extensively citing and quoting from *Skinner*, including for the proposition that "whether a juvenile who has been convicted of capital murder should be sentenced to life imprisonment without the possibility of parole is ultimately a <u>moral judgment</u>, not a factual finding," although the issue was not whether a jury, rather than a judge, had to make the *Miller/Montgomery* determination) (emphasis in original); *State v. Hart*, 404 SW3d 232, 234 n.2 (Mo. 2013) (remanding for jury resentencing under a state statute in accordance with *Miller*, stating that "[t]he United States Supreme Court uses the term 'sentencer' in *Miller* to refer to whichever entity (i.e., the judge or jury) has the responsibility under state law to determine a defendant's sentence").  But see *Stevens v. State*, 422 P3d 741, 750 (Okla. Crim. App. 2018) (citing *Apprendi* and holding, without analysis, that "[t]he Sixth Amendment

3. *Conclusion*

In light of our previous holdings that OCGA § 16-5-1 (e) (1) comports with the Sixth Amendment and *Apprendi*; our interpretation in *Veal* of *Miller* and *Montgomery*'s Eighth Amendment requirements; and the absence of authority applying the Sixth Amendment and *Apprendi* to sentencing requirements imposed solely by the Eighth Amendment, we conclude that a Georgia defendant convicted of murder committed when he was a juvenile does not have a federal constitutional right under the Sixth Amendment to have a jury make the determination required by the Eighth Amendment of whether he is irreparably corrupt or permanently incorrigible before he is sentenced to serve life without the possibility of parole.

*Judgment affirmed. All the Justices concur.*

---

demands that the trial necessary to impose life without parole on a juvenile homicide offender must be a trial by jury, unless a jury is affirmatively waived").

Decided June 29, 2020.
Murder. Upson Superior Court. Before Judge Edwards.
*Atteeyah E. Hollie, Mark A. Loudon-Brown*, for appellant.
*Benjamin D. Coker, District Attorney, B. Ashton Fallin, Elizabeth H. Brock, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.